## JAMES WARD v. THE STATE.

### *No 3415. Decided March 16.*

1. **Murder — Presumption from Use of Weapon.** — Article 571 of the Penal Code provides, that "when the homicide takes place to prevent murder, etc., if the weapon or means used by the party attempting or committing such murder, etc., are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury."

2. **Same — Application of the Statute where Weapon was not Actually Drawn—Charge of Court.**—Where the testimony showed that the deceased was a left-handed man, and that at the time he was shot his left hand was about his right breast, and that when he fell dead his left hand was on his right breast at or near where a pistol was partially drawn, *held*, that if deceased had seized a pistol and partially drawn it, then he had "used" or "was using" the pistol within the meaning of those terms as found in article 571 *supra*, and the court should have instructed the jury, in substance, that if they believed from the evidence that the deceased was making an assault on the accused, and that he was using a deadly weapon, then the law presumes that the deceased designed to kill and murder the defendant.

3. **Definitions.**—See the opinion for a discussion *in extenso* of the proper meaning and application of the words "used" and "using" a deadly weapon, as found in article 571 of the Penal Code.

APPEAL from the District Court of Red River. Tried below before Hon. E. D. McClellan.

Appellant was indicted for the murder of one William Messick, and at his trial was found guilty of murder in the second degree, with the punishment assessed at five years confinement in the State penitentiary.

The facts immediately surrounding the homicide are stated by the witnesses who saw it as follows:

Dr. Williams testified: I spoke to Ward and rode off. Messick immediately spoke to Ward. When Ward shot I could not see what Messick was doing with his left hand, as his body was between me and his left hand, but it was not down by his side. The first time I noticed the attitude of the body after Messick was dead, his left hand was on his right breast, and a pistol was partially out of his right breast pocket and in close proximity with his left hand. He (Messick) had his left hand raised in some way when he was shot, but I could not see its exact position for his body. I could not see what Messick was doing, as the right side of his body was turned to me, but his left hand was raised in some position. Messick's hand was on his right breast, at or near where a pistol was partially drawn. I saw the deceased when he fell. He had a pistol in his right breast pocket, which was partially drawn. I can not say whether he had his hand on it when shot. This is all I can say about an attack by deceased on defendant. I did not understand what Messick said to Ward. Ward said nothing.

James Ward testified: When I got up in twenty or thirty feet of them Dr. Williams spoke to me. Deceased looked around and said, "By God, I have got you now," or, "will get you," and threw his hand up to his breast, and I saw him try to pull out a pistol. The pistol seemed to hang, and was about half-way out when I fired. I shot before my horse stopped. It was his left hand. Messick was shot in the left hand. He was a left-handed man."

Mrs. Sarah Messick, widow of deceased, testified: Messick went to town the day of the killing. I gave him his pistol, which was wrapped in a flannel rag.

The witnesses Norris, Hutchinson, and others testified, that deceased had a pistol on his person.

*M. L. Sims* and *N. A. Shaw*, for appellant, as to the question discussed in the opinion of the court, propounded the following proposition and authorities:

The court erred in the charge upon the law of self-defense, in this: The court failed to charge the jury, that when a homicide takes place to prevent murder, if the weapons or means used by the party attempting or committing such murder are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury as defined by article 571 of the Penal Code. Penal Code, art. 571; Kendall v. The State, 8 Texas Ct. App., 577, 583, 584; King v. The State, 13 Texas Ct. App., 282, 283; Jones v. The State, 17 Texas Ct. App., 611; Pierce v. The State, 21 Texas Ct. App., 548; Horback v. The State, 43 Texas, 242; Penal Code, art. 484; Higginbotham v. The State, 23 Texas, 573; Johnson v. The State, 14 Texas Ct. App., 311; Jarnigan v. The State, 6 Texas Ct. App., 468; Bish. Stat. Crime, sec. 511; 1 Bish. Crim. Law, sec. 659; Whart. Am. Crim. Law, p. 461.

*James H. Lyday* and *R. H. Harrison*, Assistant Attorney-General, for the State.

HURT, JUDGE.—This is a conviction for murder of the second degree, the penalty being fixed at twenty-five years in the penitentiary. We will state substantially the facts attending the homicide, for the purpose of presenting a question in regard to which counsel contend the trial court erred in failing to give in charge to the jury article 571, Penal Code.

Mrs. Sarah Messick, widow of deceased, testified: "Messick went to town the day of the killing. I gave him his pistol, which was wrapped in a flannel rag." The witnesses Norris, Hutchinson, and others testified, that deceased had a pistol on his person. Dr. Williams: "I spoke to Ward, and rode off. Messick immediately spoke

to Ward. When Ward shot I could not see what Messick was doing with his left hand, as his body was between me and his left hand, but it was not down by his side. The first time I noticed the attitude of the body after Messick was dead, his left hand was on his right breast, and a pistol was partially out of his right breast pocket and in close proximity with his left hand. He had his left hand raised in some way when he was shot, but I could not see its exact position for his body. I could not see what Messick was doing, as the right side of his body was turned from me, but his left hand was raised in some position. Messick's hand was on his right breast, at or near where a pistol was partially drawn. I saw the deceased when he fell. He had a pistol in his right breast pocket, which was partially drawn. I can not say whether he had his hand on it when shot. This is all I can say about an attack on deceased by the defendant. I did not understand what Messick said to Ward. Ward said nothing."

James Ward said: "When I got up in twenty or thirty feet of them, Dr. Williams spoke to me. Deceased looked around, and said, 'By God, I have got you now,' or, 'will get you,' and threw his hand up to his breast, and I saw him try to pull out a pistol. The pistol seemed to hang, and was about half-way out when I fired. I shot before my horse stopped. It was in his left hand. Messick was shot in the left hand. He was a left-handed man."

The article referred to above provides: "When a homicide takes place to prevent murder, maiming, disfiguring, or castration, if the weapons or means used by the party attempting or committing such murder * * * are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury." Eliminate from the article all that does not apply to the case in hand, and it will read as follows: "When the homicide takes place to prevent murder, if the weapon used by the party attempting or committing such murder is such as would have been calculated to produce death—was a deadly weapon—it shall be presumed that the person using such a weapon designed to kill and murder." If construed strictly, this would be a remarkable statute. It could serve no purpose whatever; for, if the proof must establish the fact that the deceased or the adversary of the accused was attempting to commit murder, the presumption of law—that is, that if a deadly weapon is used, it shall be presumed that the party using it designed to kill and murder—would not be of any benefit to the accused.

We understand the statute to mean, that when there is evidence showing with reasonable probability that the adversary of the accused was in the act of murder or attempting to commit murder, and a deadly weapon was used by him, then the law presumes that it was the purpose of the party using the deadly weapon to kill and murder; and the court should submit an hypothetical case to the jury, in sub-

stance, that if the jury shall believe from the evidence that the deceased was making an assault on the accused, and that he was using a deadly weapon, then the law presumes, and the jury should presume, that deceased designed to kill and murder defendant. These observations by the way.

The trial court failed to submit the rule contained in article 571, and counsel excepted specially to the charge for this omission. Whether there was error in this respect was argued before this court by counsel for the State and appellant; counsel for appellant contending that the facts attending the homicide demanded such a charge, and the State contending that they did not, because when deceased was shot by appellant he was not "using" a deadly weapon. The State does not claim that the pistol was not a deadly weapon, but that deceased was not "using" the pistol when shot. The State concedes that if deceased was using the pistol, then the omission in the charge is reversible error, exception being saved to the omission. The question, therefore, is presented, was deceased at the time he was shot "using" the pistol, within the meaning of article 571? That he was, we have no doubt, if the testimony of Dr. Williams and appellant was true; and this must be left for the jury to decide. Let us illustrate: A says to B, "By God, I have got you now!" and at the same time throws his hand to his breast, thrusts it into his pocket, seizes a pistol, and draws it partially out of his pocket. He is prevented by bystanders from further use of the pistol. A is indicted for aggravated assault, the aggravation being that the assault was made with a deadly weapon. Will it be contended that A did not commit the assault upon B? Can it be contended that the assault was not made with the pistol? And if with the pistol, was not the pistol used in making the assault? As is so well put by counsel for appellant: "We ask the court, at what period of time does the use of the pistol begin? A person draws a pistol, cocks it, presents it, and pulls the trigger. At what stage of the proceeding does he begin to use the pistol? If it is when he pulls the trigger, the statute is absolute—is repealed; and you will have to pass on the case of another man."

Because the court failed to submit the presumption contained in article 571, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, J., absent.