Jim Robinson v. The State.

No. 8688.    Delivered June 25, 1924.

Rehearing denied June 17, 1925.

1.—Murder—Jurisdiction—Statute Construed—Chap. 76 of 38th Legislature.

Under the acts of the regular session of the 38th Legislature, chapter 76, the special District Court of Young County was authorized to empanel a grand jury, and try criminal causes and appellant's motion to quash the indictment herein on the ground that said court was without such jurisdiction, was properly overruled.   See Chap. 76, Acts, 38th Legislature.

2.—Same—Requested Charge—On Apparent Danger—Properly Refused.

Appellant's requested charge to the effect that if deceased was armed with a shot gun, and was advancing, or about to advance, etc., the law *presumed* that he intended to kill appellant or do him serious bodily injury, was properly refused.   See Art. 1106.   That one who advance toward another, or who is merely *about to advance* may be shot, down on the presumption that he intended to murder or maim the party toward whom he was advancing solely because he had a shot gun, is not the law.   There are many conditions under which a man may advance upon another, though in possession of a shot gun, without forfeiting his right to life.

3.—Same—Requested Charge—On Self-Defense—Properly Refused.

Where the evidence discloses that the first shot fired killed deceased, it was not error to refuse a requested charge, that if appellant fired the first shot in self, defense, he had the right to continue to shoot as long as he was in danger of life, or serious bodily injury, as it appeared to him.

4.—Same—Requested Instruction—On Self Defense—Properly Refused.

A requested charge that if deceased threw his gun on the defendant or *made any* other demonstration etc., was properly refused.   "*Made any other demonstration*" is not a phrase which has received judicial interpretation, and such an instruction would be erroneous, and would give the jury no legal standard by which they may judge the acts of the deceased, which would justify a homicide.

5.—Same—Special Charges—Must Not Group Facts—Practice.

Special charges so drawn as to group facts, and which submit issues not raised by the evidence, are properly refused.   There is no evidence in the instant case which suggests an abandonment of the difficulty by appellant.   See Branch's Ann. P. C. Sec. 1944 and cases there cited.

6.—Same—Special Charges—Continued.

Where the law of self defense, as raised by the evidence has been fairly. and correctly given in the main charge, special charges requested on the same issue, are properly refused.   The enumeration of a number of supposed acts of deceased in a charge which seeks to have the jury told that if deceased did these things, etc., is not only open to the objection to grouping facts, but adds no force to an affirmative presentation of the defensive theory.

· 7.—Same—Charge of Court—Relative Strength—Not in Issue.

Where the evidence discloses that the combat was entirely one with deadly weapons, and no attempt or threatened resort to physical violence otherwise appears, the court properly refused to submit a charge on the relative strength of the parties.

8.—Same—Charge of Court—Hypercritical Objections—Not Sustained.

Where the court in submitting the law on manslaughter used the phrase . . . "not done in defense of himself against an *unlawful* attack, etc," an exception to the use of the word "unlawful" is hypercritical. The use of said word was in no affirmative connection, and we think it impossible to have injuriously affected this case.

9.—Same—Provoking Difficulty—Charge on—Properly Submitted.

Where it appears that the first hostile words or hostile acts came from the accused, or those who might be reasonably supposed from the testimony to be acting with him, and the situation then leads connectedly to a killing in which the accused aserts that he acted in self-defense against a 'hostile demonstration or act on the part of the deceased, a charge on provoking the difficulty is properly submitted.

10.—Same—Charge of Court—Converse of Issue—Properly Submitted.

As a converse to the issue of provoking a difficulty, the court properly charged the theory of the accused in instructing the jury that if the acts and words of the defendant were not reasonably calculated to produce the occasion, or to bring about the difficulty, then the right of self defense would not be qualified or abridged.

11.—Same—Uncommunicated Threats—Charge on—Properly Refused.

There was no error in the refusal of the court to charge on uncommunicated threats. This subject has recently been fully considered, and such action on the part of the trial court *held* not error. See Dunn v. State, No. 7520 opinion on rehearing handed down on March 20, 1924.

12.—Same—Change of Court—Belief of Defendant—Properly Submitted.

Where the court charged the jury that "if the defendant *"honestly"* believed etc., the objection to the use of the word, "honestly" is not well founded. The case of Tillery v. State, 24 Tex. Crim. App. 251 is not in point. The exact question is discussed and settled adversely to appellant in the case of Williams v. State, 67 Tex. Crim. Rep. 302 distinguishing the Tillery case.

ON REHEARING.

13.—Same—Requested Instruction—On Self-Defense—Properly Refused.

While there may be cases where it is proper to charge the jury that if deceased was armed with a shotgun and was advancing on defendant, or about to advance on him the law presumed that he intended to kili defendant, it would not be proper in addition to charge that the defendant had a right to shoot and kill the deceased in his own self defense, where the issue of provoking the difficulty, which abridges the right of self defense, is clearly raised by the evidence. Following Rodgers v. State, 95 Tex. Crim. Rep. 1, 245 S. W. 697 and other cases cited.

14.—Same—Charge of Court—On Abandonment of Difficulty—Properly Refused.

This is a case where there are two theories viz: That of the defense, based on the claim that deceased was the aggressor throughout, and that the

accused acted wholly in self defense; that of the State being that the accused was the aggressor throughout. We do not find in the record any evidence raising the issue of an abandonment by appellant of the difficulty, and the court properly refused to submit this issue to the jury.

Appeal from the District Court of Young County. Tried below before the Hon. Walter F. Schenck, Judge.

Appeal from a conviction of murder; penalty, twenty-five years in the penitentiary.

The opinion states the case.

*S. A. Penix, Penix, Miller & Perkins, Hood & Shadle,* and *Davenport, Cummings & Thornton,* for appellant.

*James V. Allred,* District Attorney; *John B. Rhea,* County Attorney; *Marshall & King; Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, Judge.—Appellant was convicted in the district court of Young County of murder, and his punishment fixed at twenty-five years in the penitentiary.

The indictment was attacked by motion to quash based on the ground that the court in which it was returned was created as an emergency court and for the specific term of two years, that there was nothing in the bill creating the court which gave it power to impanel a grand jury, and hence the exercise of such power was ultra vires and an indictment returned by a grand jury impaneled by said court was a nullity. We find nothing in the act which brought said court into existence, see Chapter 76, Acts Regular Session of 38th Legislature, which bears out this contention. Sec. 2 of said act is as follows:

"The jurisdiction of each of said new district courts of said Ninety-second Judicial District shall extend throughout that district. The jurisdiction of said new district court of Stephens County shall extend to and include all proceedings and matters of which district courts of this State have or may be given jurisdiction by the Constitution or by the law of this State. The jurisdiction of said new district court of Young County shall extend to and include all civil and all criminal cases, proceedings and matters of which district courts of this State have or may be given jurisdiction by the Constitution or by the laws of this State."

There can be no question but that under our laws and Constitution district courts alone have the power to call into existence grand juries by rules prescribed by statute. In no other way can felony indictments be originated. The plain statements in the section of the law above quoted provide that the jurisdiction of said new district court of Young County shall extend to all proceedings and

matters of which district courts of this State have . . . jurisdiction. That this comprehends the exercise of the power of a district court in the matter of impaneling a grand jury with all of its attendant and subsequent functions and consequences, seems too plain to call for analysis or further discussion.

We note the other matters complained of, in the order in which they are presented in the able brief filed on behalf of appellant. It seems clear that a special charge stating that if deceased was armed with a shot gun and was advancing, *or about to advance,* etc., the law presumes he intended to kill appellant or do him serious bodily injury,—does not state the law as set out in Art. 1106 P. C. Said article is well understood and has been discussed in many cases and simply provides that when a homicide takes place to prevent murder, etc., if the weapon used . . . is such as would have been calculated to produce that result, the law presumes that he intended to kill, etc. That one who advances toward another, or who is merely *about of advance,* may be shot down on the presumption that he intended to murder or maim the party toward whom he was advancing solely because he had a shot gun, is not the law and this conclusion seems so plain that we think argument not necessary to demonstrate the unsoundness of the contention. None of the authorities cited and none known to this court would justify such charge. What is meant by "about to advance?" What if the advancing be provoked, or be evidently without intent to do bodily harm? Said special charge ignored the many conditions under which one may advance upon another, though in possession of a gun, without forfeiting his right to life, and its refusal was not error.

A special charge sought to have the jury told that if appellant fired the first shot in self-defense, then he had the right to shoot as long as it appeared to him he was in danger of life or serious bodily injury. Under some facts such a charge might be appropriate but not under those in this record. Deceased was shot but once, and the witnesses are in accord, both for the State and the defense, that his wound was inflicted by the first shot fired by appellant. The eye-witness who testifies for the State swears that after appellant shot deceased he ran some distance and then fired again, but the witness testified affirmatively that he saw the dirt fly where this bullet struck some distance from deceased. Appellant's brother, who was an eye-witness, swore that appellant shot the deceased in the side the first shot, and that he then ran and when he reached a point about one hundred and fifty yards away, he fired again. Appellant also swore that he shot but twice and was only about three feet from deceased when he fired the first shot and that he was about one hundred and fifty yards away when he fired the second time. It thus appears that there is no suggestion of a possibility of the deceased being struck by the second shot: it also seems without dispute that

he fired a number of shots at appellant after the first shot was fired by the latter, and that appellant did not fire the last shot, as he himself says, "till I got plumb out of reach of the gun". We are of opinion that it was not error to refuse to give said charge. The authorities cited by appellant present facts on which, because of retreat of the deceased, or of some altered attitude of the parties after the first shot was fired, there might be danger of a verdict adverse to appellant, if arrived at by considering his right to kill when the last shot was fired, a contingency which was impossible to have been arrived at, or to arise under the facts in this case.

A special charge which sought to have the jury told that if appellant met deceased and the latter threw his gun on the defendant, or *made any other demonstration* by words or acts, or both, and the defendant . . . then shot deceased believing that his life was in danger, etc.,—does not present a correct or applicable legal statement, and the court below was justified in the refusal of said special charge No. 4. "Made any demonstration" is not a phrase which has received judicial interpretation and such an instruction would be erroneous and would give the jury no legal standard by which they may judge of the acts of the deceased which would justify a homicide.

Special charge No. 5 is on the weight of the evidence and suggests matters which have no support in testimony in this case; while grouping facts which seem to raise the issue of provoking the difficulty, it wholly ignores such theory and for these reasons we would think it properly refused. There is nothing in the testimony of either the State or the appellant which suggests an abandonment of the difficulty on the part of appellant. The two special charges just under discussion are open to the objection relative to grouping a part of the facts in a special charge, as evidenced in Sec. 1944 of Mr. Branch's Annotated P. C. which seems supported by the authorities there cited.

Special charge No. 6 was covered by the main charge which in our opinion affirmatively submitted the law of self-defense based on acts or acts coupled with words of the deceased which created in the mind of appellant a reasonable apprehension that he was in danger of losing his life or suffering serious bodily harm. The enumeration of a number of supposed acts of the deceased in a charge which seeks to have the jury told that if deceased did these things, etc., is not only open to the objection to grouping facts just mentioned but adds no force to an affirmative presentation of the defensive theory.

Special charge No. 7, in so far as it presented a proposition of law pertinent to the facts in this case, was covered by the main charge. We find nothing in any authority cited by appellant in support of his contention that this charge should have been given, which remotely sheds light on the necessity, under the facts of this

case, that the jury must take into consideration the relative strength of the parties. The combat reflected by the facts was entirely one with deadly weapons and no attempt or threatened resort to physical violence otherwise appears.

In the preliminary part of the main charge on manslaughter the court told the jury in substance that if they found that the shooting was not done in defense of himself against an unlawful attack, etc., but that the killing was under the immediate influence of sudden passion, etc., they should find appellant guilty of manslaughter. There is an exception to the use of the word "unlawful" in this connection but to our minds it presents no error. The court was charging on manslaughter and the use of said word was in no affirmative connection and we think it impossible to have injuriously affected the case. Nor are we able to agree to the general exception to the main charge based on the proposition that it failed to submit affirmatively a charge upon the defensive theory.

By bills of exceptions Nos. 11 and 12 are presented appellant's criticisms of the submission of the law of provoking the difficulty. We are not in agreement with the contention either that the charge was argumentative or on the weight of the evidence, or that it was not called for by the facts. Of course if not called for by the facts it would necessarily be an unwarranted limitation on the right of self-defense. We note the facts in determining whether said charge was raised by the testimony and are of opinion that it was clearly called for by the State's testimony, which is ordinarily looked to to justify the giving of such charge, and also believe such theory suggested by the testimony for the defense. State witness Olan Robinson testified that he, deceased and a young son of deceased were driving some horses out of a pasture. Deceased was sitting in his car facing south toward the point where the two boys were driving the horses through the gate. Appellant and another son of deceased appeared coming in the direction of these parties, from the north. They drove their car up to a point a few feet in the rear of the car occupied by deceased, and just to the west of it. Appellant got out of the car before it stopped and with a pistol in his hand ran to the car in which deceased was sitting and pointed the pistol at deceased. Witness testified that he heard deceased say, "Don't shoot, it aint no use", or something like that and that appellant put his pistol in his belt or pants and backed away toward the car in which he had come, going out of sight of witness behind the car of deceased. At this time deceased got out of his car on the west side holding a pump shotgun in his hand "by the pump". He then went around the north end of his car and to the east side of it near the door. At this point appellant again came into the view of witness on the east side of the car, advancing toward deceased and holding in his hand a pistol. When he reached a point about eight feet from deceased

the latter said, "If you don't stop I will knock you down" and raised his gun, holding it by the barrel, clubbed. He did not strike but began to lower his gun from this position and when it was just about down, appellant fired his pistol at deceased and ran. Witness said that as appellant ran away deceased reversed the gun, got it in a shooting position and fired several shots at appellant. The gun was loaded with bird-shot. After running some distance appellant turned and fired again, the bullet striking the ground and making dirt fly some distance from deceased. Appellant and his brother who was in the car with him, testified in substance that when they got to a point near the car of deceased, the brother of appellant got out of their car and went toward that occupied by deceased and demanded to know why deceased was driving all of the horses out and that deceased said it was none of their damned business and began to curse and abuse both of them, and that appellant got out of his car and started toward where his father and brother were but that either because he saw his father get out of the car with a gun and advance toward him, or because his brother told him that his father was going to shoot, appellant went back to their car and got a pistol which he knew to be in the car. They then said that appellant and deceased advanced toward each other, deceased continuing to curse and abuse and threatening to kill appellant; that when they were close to each other deceased attempted to shoot appellant, who knocked up the barrel of the gun which fired in the air, and that appellant then shot deceased and ran away, deceased firing a number of shots with said shot gun at him as he fled. They said that when out of range of the shot gun appellant stopped and fired again. Considering this question in the light of the State's testimony above quoted, it seems beyond question that the issue of provoking the difficulty was raised. The first hostile act or offensive demonstration according to State witness was made by appellant when he presented his weapon at deceased while the latter was sitting in his car. That the latter was then thus provoked to get out of his car with his shotgun and go around to the east side of the car seems clear. That at this point appellant again advanced upon deceased but did not fire until deceased had made a threatening demonstration with his gun also is plain from the State's testimony. The question as to what the purpose of appellant was in making these hostile demonstrations was for the jury under an appropriate presentation of the law. See cases collated by Mr. Branch in Sec. 1954 of his Annotated P. C. Many cases will be found in which this court has upheld the proposition that a charge was called for upon provoking the difficulty, whose facts were no stronger in support thereof than are found in the defensive testimony in this case. According to it, deceased was sitting quietly in his car when he was approached by appellant and his brother, both of whom knew of the

ill-feeling existing and deceased was first accosted by appellant's brother by a demand to know why he was driving the horses out of the pasture. Appellant and his brother had gone to the place together and with a pistol in their car, and their purpose in so doing and in what they said and did, and the question as to whether same was provocative of an assault by deceased and if so whether it was to be used as a pretext for killing deceased, would become questions to be decided by the jury under appropriate instructions. A difficulty may be provoked by words or acts, or both, and when it appears that the first hostile words or hostile acts came from the accused or those who might be reasonably supposed from the testimony to be acting with him, and the situation then leads connectedly to a killing in which the accused asserts that he acted in self-defense against a hostile demonstration or act on the part of the deceased, this court would hesitate to hold it reversible error on the part of the trial court to have submitted the issue of provoking the difficulty. Under the facts in this case we have no doubt of the propriety of such instruction.

Nor do we think any error was committed by the court submitting to the jury as a converse, and as presenting a favorable theory to the accused, for him to tell the jury that if the acts and words of the defendant were not intended by him to produce the occasion, or such acts and words were not reasonably calculated to produce the occasion or to bring about the difficulty, then the right of self-defense would not be qualified nor abridged.

Appellant excepted to the court's charge because it nowhere presented a charge on uncommunicated threats. This subject has recently been fully considered and such action on the part of the trial court held not error. Dunne v. State, No. 7520, opinion on rehearing handed down March 26, 1924.

We do not think the remark of the learned trial judge to the district attorney that his questions were leading and suggestive and that he would "get a reversible error in this case", were of that harmful character to call for a reversal. Johnson v. State, 149 S. W. Rep. 165, cited by appellant, seems to be on stronger facts and a statement much more likely to have an injurious effect on the case than the statement complained of in this record, and the court in the opinion in that case does not base his reversal at all upon what was said, while stating that it was improper.

Appellant has another criticism of the charge of the court directed at that part of same in which the jury were told that "if the defendant honestly believed that such information was true". We are of opinion that the case of Tillery v. State, 24 Texas Crim. App. 251, is not in point. The exact question is discussed and settled adversely to appellant in the case of Williams v. State, 67 Texas Crim. Rep. 302, which distinguishes the Tillery case, supra.

There are other matters complained of and we have given careful attention to each of them, but deem it unnecessary to extend this opinion by a discussion of them.

Finding no error in the record which would justify a reversal, the judgment of the trial court will be affirmed.

*Affirmed.*

### CONCURRING OPINION.

MORROW, PRESIDING JUDGE.—Concurring in the disposition made, I wish to say that the distinction between belief and honest belief is not apparent to the writer. A pretended belief is not belief at all, and if there be in fact a belief that a threat has been made, it of necessity is an honest belief. Such is the view expressed in State v. Churchhill, 52 Washington, 210, and Robinson v. Territory, 85 Pac. Rep. 451. See also Strong v. State, 85 Art. 536. An "honest belief" is not more than "reasonable belief".

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant requested the following special charge:

"You are charged, as a part of the law in this case, that if the deceased, M. C. Robinson, was armed with a shotgun and was advancing, or was about to advance on the defendant on October 5th, 1923, that the law presumes that he intended to kill the defendant, or do him some serious bodily injury, and then he would have a right to shoot and kill the deceased in his own self-defense, as that term has heretofore been defined by the court."

Our original opinion is criticised for holding that no error was committed in refusing it. Many cases are referred to in the motion for rehearing construing and applying Article 1106 of our Penal Code, among them being McMichael v. State, 49 Texas Crim. Rep. 422, 93 S. W. 723. We call attention to the fact that some expressions in that opinion have been expressly disapproved in Gunn v. State, 95 Texas Crim. Rep. 276, 252 S. W. 172, both in the majority and dissenting opinions, but those so disapproved have no application in the present case. In Ward v. State, 30 Texas Crim. App. 687, 18 S. W. 793, Judge Hurt very clearly explains Art. 1106, P. C., and the manner of its application as follows:

"We understand the statute to mean, that when there is evidence showing with reasonable probability that the adversary of the accused was in the act of murder or attempting to commit murder, and a deadly weapon was used by him, then the law presumes that it was the purpose of the party using the deadly weapon to kill and murder; and the court should submit an hypothetical case to the jury, in substance, that if the jury shall believe from the evidence

that the deceased was making an assault on the accused, and that he was using a deadly weapon, then the law presumes, and the jury should presume, that deceased designed to kill and murder defendant.''

A comparison of this with the charge requested will reveal that the latter was inaptly worded. However, we are not inclined to cavil about words. Under the facts of the present case, if deceased was armed with a shotgun and advancing on accused with it, it appears to the writer it would be ''using'' a deadly weapon as contemplated in the article in question, and the jury might properly have been instructed if they found such to be the facts the law presumed that he intended to kill accused or to do him some serious bodily injury. The requested charge, however, did not stop here; what follows we think is clearly erroneous and justified the court in rejecting it. The jury were told in the concluding part of the charge that under the circumstances stated in it, appellant ''would have a right to shoot and kill the deceased in his own self-defense.'' This result by no means follows in every case where the deceased was armed with a deadly weapon and intended to kill. If the slayer had provoked the assault with a deadly weapon—(and by ''provoked'' we mean the character of provocation which would limit his self-defense)—in order that he might have a pretext to kill, he would have no right to slay his adversary regardless of the latter's intent, actual or presumptive. The last sentence of the requested charge should have been omitted.

The following special charge was requested:

''You are instructed that if you find and believe from the evidence that the defendant at the time in question got out of the car in which he had been riding and went to the deceased and drew a pistol on him, but that he desisted from shooting and walked or backed away and in good faith abandoned any conflict or intended conflict with the deceased, and the deceased then got out of his car and advanced or walked toward the defendant with a gun in his hand and it then reasonably appeared to the defendant, viewed from his standpoint alone at the time, that he was in danger of death or serious bodily injury at the hands of the deceased, then you are charged that he would have the right to shoot the deceased and continue to shoot him as long as it reasonably appeared to him that his life was in danger or he was in danger of serious bodily injury at the hands of the deceased, and you will acquit him, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, 'Not Guilty.' ''

In our original opinion we held the refusal of this charge was not erroneous. Appellant insists in his motion for rehearing that in this regard we were in error. We think the law unquestionably to be that when a charge on provoking the difficulty, or any other

instruction is given which places a limitation on accused's right of self-defense, then every issue raised by the testimony which, if found true by the jury, would restore that right unimpaired should also be submitted. (See Rodgers v. State, 93 Texas Crim. Rep. 1, 245 S. W. 697; Ware v. State, 68 Texas Crim. Rep. 376, 152 S. W. 1074; Edwards v. State, 60 Texas Crim. Rep. 323, 131 S. W. 1078; Renow v. State, 49 Texas Crim. Rep. 281, 92 S. W. 801.) After a most careful scrutiny of the facts, however, we have been unable to reach the conclusion that the issue reflected by the refused charge is raised by the evidence. While the facts cover many pages of the record, it is apparent that the time elapsing from the meeting of the parties to the firing of the fatal shot was only a very few minutes. The impression made upon us is that the evidence does not show an abandonment and renewal of a difficulty, but that the evidence given by the witnesses are the relation of incidents of one transaction occurring rapidly and soon culminating.

If there was any evidence supporting the proposition that after appellant presented his pistol at his father seated in the car the latter "got out of his car and advanced or walked toward the defendant with a shotgun in his hand" and that at that time or point appellant shot, the remainder of said special charge, to-wit: "and it then reasonably appeared to the defendant, viewed from his standpoint alone at the time, that he was in danger of death or serious bodily injury," etc., would apply, and in such case, unless such charge was somewhere given, its omission might have been hurtful. If the testimony left in doubt the proposition that appellant shot his father as the latter was advancing toward him with a shotgun, after getting out of his car, said charge or the substance of it might be demanded. If, however, the testimony is clear and undisputed that deceased, after appellant presented his pistol at him while seated in his car, and after appellant walked away north from the car of deceased,—got out of his car with a shotgun in his hand, walked toward appellant but passed him turning east and then south and walking to a point east of the car where he was when appellant again approached him with a pistol in his hand and there shot him,—then such charge would be wholly inapplicable and its refusal not error.

The two young men who were with deceased testified for the State. Appellant and his brother testified for the defense. We find nothing in the evidence of appellant or his brother supporting the claim that the special charge should have been given. These two were the only eye-witnesses for the defense, and on their testimony the defense founded its theory and insisted on acquittal upon self-defense pure and simple. Testimony, if any, calling for such charge must come from one or both of the State's two eye-witnesses. Said two witnesses agreed that appellant came to the west side of the car

of deceased with his pistol presented and that when deceased remonstrated with him he put the pistol in his belt and backed or walked north toward the car in which he came; that at this time deceased got out of his car holding a shotgun by the "pump". On direct examination, Olan Robinson, one of these State witnesses, referring to deceased, swore as follows:

"He had his gun in his right hand like this (indicating). He got out of the car on the west side, which would be the right-hand side while sitting in the car. My uncle got out of the car and walked around to the east side, walking in behind the car. I don't know where Jim was at the time he walked around to that side of the car; I could not see him.

After my uncle had walked around to the east side of the car holding his gun by the pump I next saw the defendant when he came around back of the car and around in front of the Cadillac car to where by uncle was. He same within about eight feet of my uncle at that time, which would be about here on the map, (indicating). Jim came in this position with his gun (raising right arm). When I first saw Jim that time he had his gun on my uncle. Uncle said, 'Don't shoot, there ain't any use.' Jim did not say anything. He just held his gun on Uncle Mac. Uncle said to Jim, 'If you don't stop I will knock you down.' He then raised his gun like this (indicating). He was about eight feet from Jim. He did not go towards Jim. He did not strike Jim. He taken his gun down, sorter dropped it. As my uncle took his gun down he kind'a turned, in a turning position towards the car and Jim shot him. He was standing still when Jim shot him. He had taken his gun down. Jim did not come towards him when the shoot was fired. He did not move out of his tracks until he fired the shot.

"When my uncle said, 'Jim, if you don't stop I will knock you down', and raised his gun he had hold of the barrel of the gun with the stock advanced toward him. He did not point the barrel at Jim at any time. After he let his gun down and Jim shot him, I believe the shot took effect in his right side. . . . .

On cross-examination he said:

"My uncle got out of the car—he was turned facing south, sitting in the seat and he had the shotgun leaning on the seat—when he got out of the car he picked up the shotgun by the pump and got out of the car and went back of it. He first walked to the north, then to the east and back to the south, then he stopped on the east side of his car facing the boys. Jim then came around from behind the car. Jim had backed off this direction, to the north, (indicating). I reckon he had backed off toward his car. I don't know how long Jim was out of my view, although it wasn't long.

"His father got out of the car with the shotgun and walked around the way Jim was. Jim came into my view again when he came from

behind this Studebaker. That car was my uncle's car. Jim could have gotten in front of the Cadillac. When I first saw him he was facing southeast. My uncle was facing the least bit northwest. I don't know, how far apart they were; I guess some fifteen or twenty steps. Jim's car was facing the same direction as my uncle's car. It wasn't exactly behind my uncle's car; it was a bit west of it. . . . Uncle then asked him not to shoot. He didn't shoot right then but he had his pistol drawn on him at that time and my uncle was standing there with a shotgun in his hand. He had that shotgun like this, (indicating) by the pump. Jim had his gun up level with my uncle's body, but I don't know what part of the body; something towards his stomach and breast, like that. My uncle said, 'Jim, if you don't stop I will knock you down.' All this time Jim had the pistol pointed at my uncle; both of them standing still. Jim didn't say anything; never said a word. My uncle didn't say anything; he had told him if he didn't stop he would knock him down and raised his gun up like this. He did not have hold of the stock. He had the barrel toward him and the stock towards Jim. At the same time Jim was standing out this way with his six-shooter leveled on my uncle and my uncle turned the butt of his gun towards him. My uncle didn't say anything then; he just started to take his gun down and Jim shot him.'' . . .

''When Jim got out there and drew his gun on him Mr. Robinson asked him not to shoot and Jim backed off out of sight of me; I wasn't watching him; I was watching my uncle. Jim took his father's word at the time and didn't shoot, but backed off. There wasn't another word said as far as I know from that time until he got out of the car with his gun and walked on the other side of the car. I don't know as he followed Jim off. He had to go toward Jim to get around the car. I guess he went toward Jim in a way when he got out of the car with the gun in his hand.''

Arlie Robinson, the other State witness, told of the approach of appellant to his father's car, and explained to the jury from a map how his father got out of the car and where he walked after appellant backed off. On cross-examination he said:

''I say Jim was on the north of father's car in front of his car standing there talking to Ebwell; my father he walked around behind his car, well yes, pretty close to where Jim was. I don't know how far it was, two or three or four feet I guess. Well, I could see them until they went behind the cars; they did go behind the cars. . . .

''I don't know what happened in behind the car. When they got out my father was standing there in the face of Jim's pistol and had his shotgun still by the pump.

''It is not a fact that when Jim had his pistol on him there that my father took the gun that way and pointed the stock towards him;

he had it the way you are holding it and told him he would knock him down if he didn't quit—father was about as far from Jim when he told him he would knock him down as from here to Mr. Rhrea—he did not advance towards him; he let the gun down, and started to turn and Jim shot."

Again he said, speaking of his father:

"He had gone three or four steps towards the car, you say, when Jim shot him, well he just started to turn around, he had just taken one step, that's all he had taken. He was on the east side of the car along like that. Jim was six or eight feet and not in hitting distance of my father and didn't shoot until he started to turn. My father had the barrel of the gun in his hand and let it down and took it by the pump again; he done all that with Jim standing there with the pistol in his hand pointed toward him; well I don't remember if Jim said anything. I can not tell the jury one word he ever said. Jim shot although my father had turned around. Jim turned and run after he had shot him, father turned to the west, Jim turned to the east; he still had the pistol in his hands. Well, when Jim shot the second time father turned around and shot."

From this entire record, as well as these quotations, it seems beyond dispute from the State's testimony that when deceased got out of his car with a shotgun in his hand he went around the back or north end of said car to the east side of it and was there approached the second time by appellant with a pistol presented. Holding his shotgun by the pump or barrel, deceased told appellant to come no further or he would knock him down, following which appellant fired the fatal shot. To such facts the requested charge could have no application. Under them it finds no support. There is no pretense that appellant fired at deceased as he was advancing north on the west side of his Studebaker car, toward appellant.

Nor do we find anything on which to base the theory that appellant was injured by the failure of the court to charge on abandonment of the difficulty. If appellant, after putting his pistol in his belt and backing north toward his car, had fired as deceased came north toward appellant's car on his way around his own car, some basis might then exist for such claim, but this proposition finds no support in the testimony for either side. The defense denied in toto the first advance of appellant, deny his putting up his pistol, and deny his subsequent drawing of it. The State's witnesses with equal positiveness swear that appellant did not fire on deceased as he was going north on his way around back of his car to its east side, and also swear that after he got around there appellant again advanced upon him with a drawn and presented pistol, at which place the killing occurred. We find in this no suggestion calling for a charge on abandonment of the difficulty.

This is a case where there are two theories, viz: that of the defense based on its claim that deceased was the aggressor throughout and that the accused acted wholly in self-defense; that of the State being that the accused was the aggressor throughout. If the State prove that after presenting the pistol at deceased the accused walked away but presently came back to where deceased was standing with a shotgun in his hand, and for no other reason disclosed by the testimony than that deceased then raised the gun, holding it by the barrel and told appellant to stop or he would knock him down, the latter fired, these facts, in our opinion, do not call for a charge on abandonment of the difficulty. We believe this man has had a fair trial and that the court gave him all the law in the charge to which he was entitled.

The motion for rehearing is overruled.