## M. L. MILLER v. THE STATE.

No. 16660.   Delivered May 2, 1934.

The opinion states the case.

*Baker & Baker,* of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at confinement in the state penitentiary for a term of two years.

The facts are in substance as follows: The appellant had leased a small farm of approximately 140 acres from M. H. Witt in the year 1932. The appellant and deceased entered into an agreement by the terms of which deceased constructed a small house on the premises with the right to live there, make a crop, and look after the appellant's property. The appellant was boarding at the home of the deceased. After some 3 or 4 months some disagreement arose between them and the appellant proposed to either buy out the deceased or that deceased buy him out. It appears that they had reached an agreement by which the appellant was to purchase deceased's crop but two

or three days before the fatal difficulty he refused to comply with the agreement. On Sunday, July 2nd, the mother of the deceased's wife and her little son were at the home of Everett Crowder, the deceased, when some unpleasantness occurrd between deceased and his wife. She said that she was going to leave and he told her that if she left to stay away and never come back. She and her child rode off on the appellant's horse and the appellant also left the premises. They went to the home of the appellant's brother, Jessie Miller, remained there during Sunday night, which was the 2nd of July, and it seems from the testimony that the appellant and Mrs. Crowder, deceased's wife, and her small child remained at Walker's residence during the night of July 3rd. At about 5 o'clock in the morning one Lancaster, who was a brother-in-law of the appellan, appeared at the Walker house and advised the appellant that the deceased and his father-in-law, Mr. Witt, were looking for him and that they had a gun. That they had been at Jessie Miller's home and Crowder came in there, jerked the screen off, and asked where appellant was. They left but in a little while they came back and inquired if Fayette Miller was there and when informed that he was not there they seemed to doubt it and they were invited into the other room of the house to satisfy themselves. Thereupon, Hector Miller, brother of appellant, went to the home of appellant's father, where appellant had gone, and advised him, the appellant, that the deceased and his father-in-law were looking for him. After receiving this information the appellant telephoned the sheriff's office asking for protection and instructed the officer where he was and where he could be found. About the time that the officers reached the home of appellant's father, the deceased and his father-in-law drove up and started in the house. The appellant's father, who was sitting on the rear porch, advised the deceased not to enter said house, but he did not heed his warning. He went to the rear of the house, opened the screen door, and went right into the kitchen and from there into the dining room, and as he was entering the living room from the dining room the appellant shot him. The appellant testified to numerous threats which had been made by the deceased against him and which had been communicated to him and that he was afraid at the time he shot the deceased that the deceased was going to carry said threats into execution. He also testified that when the deceased started to enter the living room he put his hand in his bosom, and, when he did so, he (the appellant) fired three shots in rapid succession, and when he saw the de-

ceased fall he saw the butt of a pistol on the floor under his body. The appellant's mother testified that she was in the house at the time of the fatal shooting and saw the deceased coming from the dining room to the living room and she saw a small blue barreled pistol in his hand and that when he fell to the floor the pistol was lying beside his side; that Mr. O'Barr, the deputy sheriff, picked up said pistol and put it in his pocket. Mr. O'Barr, the deputy sheriff, testified for the State that he was in the sheriff's office when the appellant called for protection and in pursuance to said telephone call he and another deputy proceeded to the home of the appellant's father. He said that within a few minutes after the shots were fired he entered the home, saw the deceased lying on the floor, but saw no pistol on his body or at his body and did not pick up any pistol. The State sought to prove that deceased was a man of kind and inoffensive disposition.

This record is before us with 27 bills of exceptions and quite a number of objections to the court's charge, but to discuss all of them would unnecessarily extend this opinion. Therefore, we will only consider such as we deem most important in the disposition of the case.

The appellant objected to the court's main charge because the court failed to charge the jury that if they believed from the testimony that immediately prior to and at the time that the appellant shot the deceased, that the deceased was armed with a pistol and was attempting to murder or maim the defendant it will be presumed that the deceased designed to inflict the injury, which objection the court overruled, and thereupon the appellant presented a requested special charge on that phase of the case under article 1223, P. C., which the court declined to give.

We are of the opinion that the court fell into error in failing to charge upon the presumption arising from the use of a deadly weapon by the deceased, as prescribed by article 1223, P. C., and in declining to give appellant's requested special charge on that phase of the case. The appellant testified that after he shot the deceased and after the deceased fell to the floor he saw the butt of a pistol under his body. The appellant's mother testified that she was in the house at the time of the shooting and saw the deceased as he entered or was about to enter the living room with a blue barreled pistol in his hand; that she saw it on the floor beside his body after he had fallen to the floor and saw Mr. O'Barr pick it up and put it in his pocket. It is true Mr. O'Barr denied this; however, the issue

was raised and the appellant was entitled to such an instruction and to have the jury pass upon that issue. In the case of Gaither v. State, 3 S. W. (2d) 814, this court said: "Where the evidence raises the issue of the use of a deadly weapon by deceased, it is an absolute presumption imperative to juries, as well as courts, that deceased 'designed to inflict the injury' mentioned in said article, and same must be given in charge to the jury." In the case of Carter v. State, 97 Texas Crim. Rep., 508, Judge Lattimore, speaking for this court, said: "We have held in many cases that, if the facts show an attack by such weapon, the trial court should give in charge the substance at least of said article." In the case of Jernigan v. State, 112 Texas Crim. Rep., 536, this court said: "We have held that where the evidence raises the issue of the use of a deadly weapon by deceased, the article quoted should be given in charge to the jury."

By bills of exception Nos. 13 and 14 the appellant complains of the action of the trial court in permitting the District Attorney, in his endeavor under article 1258, P. C., to prove that the deceased was a man of a kind and inoffensive disposition, to prove that he, the deceased, carried on and about his person a certain book and read certain papers and books at night. We are of the opinion that said testimony was inadmissible for that purpose because we do not believe that a man's disposition can be established by the papers or books which he may carry and read.

The other matters complained of will perhaps not arise again upon another trial.

For the errors pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.