RAYMOND BALLEW v. THE STATE.

No. 20962. Delivered May 8, 1940.
Rehearing Denied (Without Written Opinion) June 28, 1940.

James C. Mahan, of Childress, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is an assault with intent to murder with malice. The punishment assessed is confinement in the State penitentiary for a term of two years.

The testimony adduced by the State, briefly stated, shows that in the early part of the night the officers overtook appellant in his car going in the direction of the negro section of the town of Memphis. They stopped him, searched his car for whisky and found two pints which they placed in the officers' automobile. Appellant reached in the car, took the whisky and threw it in the weeds. One of the officers knocked appellant down. Appellant arose from the ground and while the officers were engaged in looking for the whisky he made his escape, leaving his automobile in possession of the officers. The officers took the automobile to the jail yard and parked it. They then proceeded to appellant's home, which was located in a garage apartment, for the purpose of searching it. While some of the officers were on the small platform at the head of the stairway

asking to be admitted, they heard glass breaking. Not receiving any response to their request, they decided to break a window pane, unlock the window and enter the building. While the officers were thus engaged, some one fired upon them from behind a utility pole standing sixty or seventy feet away, and one of the officers returned the fire and saw a man run away from behind the pole whom he recognized as the appellant. One of the officers was struck by a bullet in the arm and another one was struck by a bullet in the leg.

Appellant testified that he was in his home breaking whisky bottles and running the contents into the bath-room drain at the time the officers were attempting to gain entrance to his home and the shooting took place. That after the shooting he left his home by going through the east window and descending to the ground. In this he was corroborated by his wife.

Appellant also proved by a negro, who occupied a room in the lower part of the garage, that after the shooting he asked one of the officers if he knew who did the shooting, to which the officer replied that he did not.

Bill of Exception No. 1 reflects the following occurrence: While Edd McCreary was being cross-examined by appellant's counsel, he was asked if he knew a negro by the name of Fenner and if Fenner did not owe a fine for bootlegging? If they, the officers, had not made arrangements with Fenner that if he, Fenner, would entice the appellant over to his place so that they might arrest appellant they would relieve him from the payment of the fine. And, if, pursuant to said agreement, Fenner had not informed them, the officers, that appellant would be there that night with some whisky? To all of which the State objected and the objection was sustained. The bill further shows that if the witness had been permitted to answer said questions, he would have answered them in the affirmative. The bill is qualified by the court, who states in his qualification that the defense attorney asked whether the witness had agreed with the negro Fenner "if he would help catch Raymond Ballew you would turn him, Fenner, loose." To which the witness answered, "Not with me, he didn't have." To this qualification no exception was taken; hence appellant is bound thereby. The bill as thus qualified fails to reflect reversible error.

Bill No. 2 reflects the following occurrence: After appellant had testified that he was in his home at the time of the

shooting and did not do the shooting, he undertook to further testify that after the shooting he had a conversation with Dr. E. H. Boaz of Memphis, Texas, who admitted that he, Boaz, did the shooting but declined to come into court and testify to said fact because he did not want to get into trouble. The State objected thereto, the court sustained the objection and refused to let said testimony go to the jury. The court qualified this bill and in his qualification states: "There is no testimony in the record or offered that Boaz was at the scene of the shooting or even in town, outside of the alleged admission of Boaz to the defendant. Moreover, Boaz was under process and available as a witness," etc.

It seems to be the rule in this State that when the State relies upon circumstantial evidence alone to establish the guilt of the accused, the declarations of a third party admitting that he committed the offense, is a proper matter of proof. See Stone v. State, 265 S. W. 900. But the record in this case, in our opinion, does not bring the proffered testimony within the rule announced. In the case at bar, the State did not seek to establish the appellant's guilt by circumstances but by eye-witnesses. See Hodge v. State, 64 S. W. 242; Burkhalter v. State, 247 S. W. 539 (546); Proctor v. State, 25 S. W. (2d) 350; Stinson v. State 60 S. W. (2d) 773.

Appellant addressed a number of objections to the court's charge and particularly to Paragraph 9 thereof on the ground that said charge is ambiguous, confusing and calculated to mislead the jury in that it required the jury to find, beyond a reasonable doubt, that the assault, if any, was made without malice, thereby placing a greater burden on the defendant than the law requires, etc. Looking to Paragraph 9 of said charge, we find that after the court had instructed the jury that if they believed from the evidence, beyond a reasonable doubt, that on or about the 10th day of November, 1937, the defendant, in Hall County, Texas, did make an assault upon C. B. Hume with the specific intent to kill the said Hume at the time and place alleged in the indictment and if they further find from the evidence that the defendant was actuated and prompted in so doing, if he did, by his malice aforethought, etc. The court, however, in connection therewith, in the same paragraph, instructed the jury as follows: "If you further find and believe from the evidence beyond a reasonable doubt that the defendant did at the time and place as alleged in the indictment make an assault on the said C. B. Hume with the specific intent then and there to kill the said C. B. Hume and that such

an assault, if any, was made without malice as that term has been defined in this charge, then you will find the defendant guilty of an assault with intent to murder without malice and assess his punishment at confinement in the penitentiary for not less than one year nor more than three years, but if you should fail to so find beyond a reasonable doubt or if you have a reasonable doubt thereof, you cannot convict the defendant of an assault to commit murder without malice, but you may then consider in your judgment whether the defendant is guilty or not of the offense of aggravated assault under the law as herein given."

Appellant contends that the instruction required the jury to find and believe from the evidence beyond a reasonable doubt, not only that he made an assault with the specific intent to kill, but also that he did it without malice. It occurs to us that this charge is erroneous, because if the jury believed from the evidence beyond a reasonable doubt that appellant made an assault upon C. B. Hume with the specific intent to kill, but entertained a doubt as to whether it was without malice, then what were they to do? They were then driven back to the instruction on the law of assault with intent to murder with malice, because having found that he made the assault with the specific intent to kill, they could not convict him of an aggravated assault and battery even though they failed to find beyond a reasonable doubt that he made the assault without malice. Therefore, the jury had to go look elsewhere for a guide to lead them out of the maize of legal entanglement, and the only recourse they had was to go back to the charge on the law of an assault to murder with malice, and this they may have done inasmuch as the conviction was for an assault to murder with malice.

After a careful inspection of Paragraph 13, we reached the conclusion that it should be simplified by omitting, "as you may find from the evidence." A plain simple instruction as to the law applicable to the case without being coupled with too much verbiage will avoid confusion and relieve the courts of much trouble.

From what we have said it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.