EARL THOMAS BREWER V. THE STATE.

No. 21771. Delivered October 29, 1941.
Rehearing Denied January 7, 1942.
State's Request for Leave to File Second Motion for Rehearing
Denied (Without Written Opinion) January 14, 1942.

The opinion states the case.

*Cunningham, Lipscomb & Cole,* of Bonham, and *Ardell M. Young* and *Rogers & Spurlock,* all of Fort Worth, for appellant.

*Marvin H. Brown, Jr.,* Criminal District Attorney, and *M. Hendricks Brown,* Assistant Criminal District Attorney, both of Fort Worth, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

For the murder of Glen Cox by cutting and stabbing him with a knife appellant was convicted and his punishment assessed at ninety-nine years in the penitentiary; from which he appeals to this court.

The deceased, nineteen years of age, and Virginia Brewer, almost fifteen years of age, and daughter of appellant, were sweethearts; they attended the same school; they lived with their respective parents, about two miles apart, in Fannin County. Appellant objected to his daughter's going with and keeping the company of the deceased. He had, on repeated occasions, whipped her for going with him and keeping his company. She had been required, by her father, to return a watch to the deceased, which he had given to her.

These were the conditions existing at the time of the happening of the events just prior to the killing.

A few days prior to the day of the killing, the deceased and Virginia eloped, going to Fort Worth, Texas, where they secured a license and were, in the presence of friends, married.

Upon discovering that they had eloped, appellant began a search for them. He contacted and visited various places, in an effort to ascertain their whereabouts. He sought the advice of officers as to instituting kidnapping charges against deceased. He discussed the matter of annulling the marriage if they had

married. During these inquiries, he received information that they had in fact married. As showing his attitude towards deceased, there was evidence to the effect that appellant had stated that he would just as soon his daughter lived with a "nigger" as to live with the deceased and that "he was aiming to blow his head off when he found him."

On the morning of January 10th, 1941, or four days after the marriage, appellant's wife received a post card, signed by the daughter and deceased, showing that they were in Fort Worth, Texas, and advising, among other things, that they were "Sorry we had to do like we did but you know what caused it. Don't know when we'll be home." Immediately upon receipt of this card, appellant and his wife began preparing to go to Fort Worth, and did, on the afternoon of the same day, arrive in that city. A Deputy Sheriff of Fannin County accompanied them. Upon arrival, inquiry was made of friends as to the couple's whereabouts. They were told that they were at the home of some friends in the city, and that they were married. The person so informing them said that she knew they were married because she was present at the wedding. This party agreed to go with appellant and his wife and to show them where they were staying. Upon reaching the place, appellant and wife and guide entered the house and started up the stairway leading to the second floor. The deceased and his wife, with his arm around her, started down the stairs, meeting them. Upon reaching a point about two-thirds up the stairs, all parties met, when the wife of appellant said to the daughter:

"We have come to get you, Virginia. We have the law." According to witnesses for the State, appellant caught hold of his daughter and pulled her down the stairs behind him. Virginia then said to deceased: "Come on, darling"; to which appellant replied: "No, he's not coming," and stepped toward deceased, and, as he did so, struck him in the neck with a small knife, cutting the jugular vein and carotid artery, as a result of which deceased died shortly thereafter, after having walked back up the stairs and into a room.

Witnesses for the State testified that deceased made no demonstration and did not say anything at the time of or prior to the assault by appellant. The State's case showed an unprovoked and unjustified killing. Appellant's contention that

the facts authorized no higher punishment than that affixed for murder without malice is· overruled.

Appellant admitted the killing, but denied any intent to kill. He justified his act by saying that he was defending himself from what appeared to him to· be an attack by deceased with his fist. He also justified his act because of threats of deceased. There was testimony by appellant to the effect that, notwithstanding he had heard, and had been told, that his daughter and deceased were married, yet he did not believe it, and that he was defending his daughter from what he believed was an effort on the part of deceased to ruin her.

The case was submitted upon the issues of murder with and without malice and aggravated assault, together with the several defensive theories.

In submitting the law of murder without malice, the trial court instructed the jury as follows:

"But if you find and believe from. the evidence, beyond a reasonable doubt, that the defendant herein, on or about the 10th day of January, 1941, in the County of Tarrant and State of Texas, did voluntarily kill the said Glen Cox by cutting or stabbing the said Glen Cox with a knife as alleged in the indictment, and that such killing, if any, was committed without justification or excuse, and that, at the time the defendant so killed the said Glen Cox, if he did, the defendant was then under the immediate influence of a sudden passion arising from an adequate cause, and that such cause or causes, if any, was or were such as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection, then you will find the defendant guilty of murder without malice, and assess his punishment at confinement in the penitentiary for not less than two years nor more than five years;

"Unless you do so find from the evidence, beyond a reasonable doubt, you will not convict the defendant of murder without malice."

To this charge the appellant excepted because it was upon the weight of the evidence and· because it shifted the burden of proof in that, before the jury would be warranted in returning a verdict of murder without malice, they would be

required to believe beyond a reasonable doubt that the mind of appellant was incapable of cool reflection at the time he struck the fatal blow. In support of this contention, he cites the cases of: Huddleston v. State, 112 S. W. 64, 54 Tex. Cr. R. 93; Mason v. State, 228 S. W. 952, 88 Tex. Cr. R. 642; Ballew v. State, 141 S. W. (2d) 654, 139 Tex. Cr. R. 636; Anderson v. State, 267 S. W. 486, 99 Tex. Cr. R. 13.

The charge as given stated a correct legal proposition in that its effect was to instruct the jury that, if appellant killed deceased without justification, under the immediate influence of sudden passion, aroused by an adequate cause, he would be guilty of murder without malice. Under our statutes, a killing under such circumstances would be one without malice aforethought; but, the burden would not rest upon the accused to prove the circumstances that would constitute the killing one upon adequate cause or one of murder without malice as distinguished from murder with malice. To constitute an unlawful killing one without malice, the burden is not upon the accused to prove the mitigating circumstances distinguishing same from murder with malice; but, he is entitled to have the punishment affixed to that of murder without malice, if there be evidence which produces in the mind of the jury a reasonable doubt as to the existence of the mitigating circumstances.

The Huddleston case, supra, was one where the conviction was for murder in the second degree. Facts were in evidence sufficient to reduce the killing to that of manslaughter; and, in submitting such issue to the jury, the following charge was given:

"If you believe from the evidence in this case beyond a reasonable doubt that, a short time prior to the alleged killing of the deceased by the defendant, the deceased had assaulted the defendant, and you further find the deceased abandoned said assault and had quitted the combat, as far as he could, and you find that, the defendant then under the immediate influence of sudden passion, which passion was produced by the assault of the deceased upon the defendant a short time prior to the shooting, the defendant fired upon and killed the deceased, and you find beyond a reasonable doubt that the defendant was not acting in self-defense as herein charged, then and in that event the defendant would be guilty only of manslaughter; and if you so find you will so say."

It will be noted that such charge is strikingly similar to that of the instant case, in that, in the Huddleston case, the jury were required to believe from the evidence beyond a reasonable doubt the facts which, under the law as it then existed, would have constituted no higher grade of offense than that of manslaughter, which, at that time, was a lower grade of offense, and carried a lesser punishment, than that of murder.

In holding such charge error, Judge Davidson, speaking for this court, said:

"We believe this charge is subject to the criticism that it required the jury to find affirmatively beyond a reasonable doubt that a short time prior to the killing deceased had assaulted the defendant, shifting the burden of proof as well as the reasonable doubt. Appellant did not have to prove beyond a reasonable doubt that the deceased had attacked him with the ax handle. The reasonable doubt is resolved in appellant's favor; and they were further required by this charge, in order to mitigate the homicide to manslaughter, to affirmatively find beyond a reasonable doubt that appellant killed deceased under the immediate influence of sudden passion produced by previous assaults. This charge, it occurs to us, placed the burden of proof on appellant, and turned the reasonable doubt against him. The accused is entitled to the reasonable doubt of the existence of criminality in regard to facts, when his life or his liberty is sought at the hands of a jury."

State's counsel insist that the giving of the charge here under attack was not error under the authorities of Pitts v. State, 16 S. W. 189, 29 Tex. App. 374; Moore v. State, 228 S. W. 218, 88 Tex. Cr. R. 624; Hettich v. State, 95 S. W. (2d) 113, 130 Tex. Cr. R. 580.

At first glance, it might appear that there is a conflict between the holding in the Huddleston and Moore cases, supra; but, when these cases are examined closely, it will be noted that there is a substantial difference between them.

In the Moore case, supra, the charge there given was in fact similar to that here presented and condemned in the Huddleston case, supra, in that it required the jury to believe beyond a reasonable doubt the facts necessary to reduce the homicide to manslaughter. The conclusion that such charge was not error in the Moore case was stated by Judge Morrow, as follows:

"The usual manner pursued is to embrace in the charge a qualifying instruction to the effect that if the jury believe beyond a reasonable doubt that the accused is guilty of some grade of culpable homicide, but have a reasonable doubt as to whether it is murder or some lower grade of offense, then the benefit of the doubt must be given to the accused, and no conviction can be had of the higher grade. Such qualifying instruction has generally been held, in the absence of request for more specific instruction, sufficient to relieve the charge of substantial objection when considered as a whole."

The rule there announced is that, even though the charge there given be erroneous as shifting the burden of proof as pointed out, yet it would not constitute reversible error in the absence of a correct special requested charge or specific exception on the part of the accused, if the trial court, in his charge, instructed upon the reasonable doubt as between the grades of the offense, and to the effect that if there existed in the mind of the jury a reasonable doubt as to whether the accused was guilty of some grade of murder or manslaughter to acquit of the higher grade of offense.

In the instant case, we find the following qualifying charge:

"Even tho you should find from the evidence, beyond a reasonable doubt, that the defendant is guilty of some offense defined herein, yet if you have a reasonable doubt as to whether such offense, if any, is murder, or aggravated assault, then you will not convict him of murder but may consider only whether he is guilty of an aggravated assault."

This charge related to the offense of murder and aggravated assault. It did not constitute an instruction to the effect that if they entertained a reasonable doubt as to whether the appellant was guilty of murder with or without malice to give him the benefit of such doubt and to assess no greater penalty than that applied to murder without malice. The charge in this case as a whole has been examined and no such instruction as above just referred to is found therein.

The exception noted as controlling the disposition made of the Moore case, supra, is not present in the instant case. It follows that the rule announced in the Huddleston case, supra, is applicable and controlling, and that the charge as given was subject to the error assigned thereto.

Upon another trial we deem it advisable that testimony relative to the acts of the father of the deceased done outside the presence of the appellant, as well as relative to the petition for dismissal of the Deputy Sheriff of Fannin County, as shown by bills of exception, should not be admitted in evidence.

The other bills of exception are overruled.

For the error in the charge, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, Judge.

In a motion for rehearing the State urges that when considered in its entirety the charge of the court relieves of vice the particular instruction criticised.

We have again examined the charge in view of the State's position and find ourselves unable to agree with the State's contention. The reasons for our views seem to be sufficiently stated in our original opinion.

The State's motion for rehearing is overruled.