MARSHALL THREADGILL V. STATE.

No. 25246. April 11, 1951.
Rehearing Denied June 6, 1951.

158

Hon. A. S. Broadfoot, Judge Presiding.

*Pat Beadle,* Clarksville, and *McKinney & McKinney,* Cooper, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

The conviction is for murder. The punishment assessed is confinement in the state penitentiary for five years.

Appellant and deceased owned adjacent farms. A dispute arose as to the correct location of a boundary line between their farms. The amount of land actually involved was a very small strip. Appellant had been in possession of his tract of land for a number of years, but the deceased had only recently acquired his tract. Deceased came to the conclusion that a fence along appellant's north line was 66 feet over his (deceased's) land. Deceased called upon appellant to move the fence. Appellant claimed that the fence was on the correct line and had been so located for a long period of years, and refused to move it. The killing grew out of this difficulty.

There was no eye witness to the killing other than the appellant. The state's case consisted mainly of proof that appellant surrendered to a justice of the peace soon after the shooting, advising that he had killed a man and wanted to surrender. There was proof of the finding of certain blood spots and other

physical facts, which the state contended showed an unjustified killing.

Appellant admitted the shooting. His defense was that he killed deceased by shooting him in self-defense by reason of the actual attack by deceased while using, exhibiting and advancing upon him with a gun or rifle. There was also evidence of threats.

Two propositions are urged for a reversal of the conviction. These relate to the charge of the court.

The trial court, notwithstanding a proper exception and also a special requested charge, failed to charge the presumption which arises as a matter of law, under Art. 1223, Vernon's P.C., relative to the use of a deadly weapon by the deceased. Said article reads as follows:

"When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapon or means used by the party attempting or committing such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury."

It has been the long and consistent holding of this court that where the evidence raises the issue of the use of a deadly weapon by the deceased, it is an absolute presumption, imperative to juries as well as courts, that the deceased intended to inflict the injury mentioned in said article and that the provision thereof must be given in the charge to the jury. See McCoy v. State, 135 Tex. Cr. R. 73, 117 S.W. (2d) 787; Middleton v. State, 147 Tex. Cr. R. 146, 179 S.W. (2d 510; Hurst v. State, 151 Tex. Cr. R. 615, 210 S.W. (2d) 594.

That the facts did not raise the issue is demonstrated by the testimony of the appellant which we quote:

"I got out of my car and started toward the front end of the car, toward Mr. George, and I said, 'I would like to talk to you,' and he said, 'I don't have a damn thing to say to you', and he started walking toward me. I commenced backing up, backing back. I backed back to my car door. I reached for the door and he turned and I reached the door and brought my gun out and he turned and commenced pulling off his gloves and started west, and I seen a gun lying down there, leaning up against the spool of wire. That gun was probably twenty or twenty-

five steps from where Mr. George was. I couldn't hardly tell how far that gun was from the west end of that hog pasture there. You see the land there, and just guessing at it, probably that far away from him, probably ten or twelve feet. When I saw him going toward the gun I shot. No, I didn't shoot at him. I shot over toward that pool. I shot at that time because I didn't want to shoot him and I thought he might stop. No, sir, he did not stop. At that time he got to his gun and reached over to get his gun and came up with his gun in his hand and I shot him. Yes, sir, I shot at him at that time. I shot at him because I thought he was going to shoot me. At the time I shot him he had his back toward me. He was going west to his gun. Yes, sir, when I shot he had his gun in his hand."

We do not think that this testimony raised the issue that the deceased was "attempting or committing such murder," etc., as demanded by statute, so that it could be presumed therefrom that the person so using such weapon designed to inflict the injury contemplated. From appellant's own testimony, above quoted, it is shown that prior to the time the deceased had touched his gun or had reached the same, appellant had already fired one shot which he claimed was not directed at the deceased, and that as the deceased picked up his gun, appellant shot him in the back. Evidently the deceased's back was toward the appellant. We are therefore at a loss to see how the deceased could have committed even a simple assault with his back turned toward the assaulted party. It is worthy of note also that the officer who early appeared on the scene found the deceased's .22 caliber rifle in his pickup. We do not think that the statute, Article 1223, Vernon's P.C., was called for by the facts. See Robinson v. State, 100 Tex. Cr. R. 424, 274 S.W. 137; Miller v. State 126 Tex. Cr. R. 220, 71 S.W. (2d) 516.

In Cain v. State, 154 Tex. Cr. R. 284, 226 S.W. (2d) 640, we said:

"Mere possession of a deadly weapon by the deceased does not raise the presumption provided by Art. 1223, P.C. It is the use of such weapon in making an assault that raises the presumption, not its mere possession."

Again, it is held in Gunn v. State, 95 Tex. Cr. R. 276, 252 S.W. 172, relative to the failure of the trial court to charge on the presumption arising from the use of a deadly weapon by the decased as follows:

"We do not believe any case can be found in the books where the testimony of the accused alone is relied upon to establish both issues, and in which the court fully and fairly submitted the law of the right of the accused to act in self-defense based on danger, actual or apparent, as viewed from his standpoint at the time, in which this court has ever held that it was reversible error to decline to give Article 1106 (now Article 1223), both issues being dependent upon exactly the same testimony."

We think this is true because we note that the careful trial court charged the jury fully and fairly relative to the right of self-defense, not only against actual but also as to apparent danger as viewed from the appellant's standpoint alone. He also charged the law relative to threats. We think this was all that he was entitled to under the testimony.

The court's charge relative to the question of murder without malice is also criticized, and it is insisted that the same was held to be error in the case of Ballew v. State, 139 Tex. Cr. R. 636, 141 S.W. (2d) 654, and also in Brewer v. State, 143 Tex. Cr. R. 136, 157 S.W. (2d) 388. We have examined the charge and it seems to be in line with that approved in Davis v. State, 110 Tex. Cr. R. 605, 10 S.W. (2d) 116, in the opinion written by Presiding Judge Hawkins. It seems to us that the charge complained of demands: first, that the jury must find appellant guilty of unlawfully killing the deceased; and second, that he acted with malice aforethought or without such malice. The jury was instructed that if there was any doubt thereof the defendant should receive the benefit of such doubt and he could not be guilty of any greater offense than murder without malice; but unless the jury did first believe that the defendant was guilty of murder under one or the other of the two preceding paragraphs, he should be found not guilty by their verdict. We do not think that this charge shifts the burden of proof because it demands that the jury must find the appellant guilty of unlawfully killing the deceased, and the questioned portion of the charge merely tells them that they must apply the doubt therein to the appellant's benefit, but unless they have previously found him guilty of unlawfully killing the deceased, they should acquit him. We think the charge itself follows the better line of reasoning and as such gave appellant the benefit of every contention that has arisen under the testimony.

Bill No. 1 relates to the fact that the Assistant County Attorney was allowed to testify that he saw an unusual mark on a

post at the scene of the difficulty which resembled the place where a bullet or shot might have struck this post of Bois D'Arc wood. We see no particular harm at least that this statement might have caused the appellant herein. According to his own testimony, he shot once prior to the time he killed the deceased, and it seems that the shot was fired in his general direction. It is found in the evidence that there was some blood on the deceased's side of the fence; also that a hat was found at such place after the shooting, as well as the fact that appellant's rifle was found by the officers in the appellant's pickup which seems to have been upon the appellant's side of the fence. We confess our inability to see any harm that could have come to the appellant because it seems that possibly one of these bullets struck the post near the scene of this tragedy.

Bill No. 5 complains of certain remarks of the county attorney. We do not think these remarks were of sufficient importance to justify a reversal of this case.

The judgment is therefore affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

MORRISON, Judge.

Appellant's able motion for rehearing directs our attention to Bills of Exception #4 and #5.

Bill of Exception #4 complains of the trial court's failure to charge on the provisions of Art. 1223, P.C. In our original opinion we stated that the evidence did not raise the issue. There was a showing that the deceased had a gun in his hand but no showing that he was using the same as a firearm to make an assault upon appellant at the time appellant fired the fatal shot. A showing of such use at such time is essential in order to raise the issue. The fact that deceased was shot in the back negatives the probability of such use.

Bill of Exception #5 complains of the argument of the county attorney as follows:

"I say to you that in my opinion if from the evidence coming from that stand you don't see fit to put Marshall Threadgill in the penitentiary for a long time or give him the death penalty, you might as well fire the judge on the bench, fire the sheriff, get rid of your county attorney and burn up your law books about murder."

We in nowise commend either the logic or the propriety of such argument, but with the facts of this case in mind, we review the decisions of this court concerning similar argument.

In Coats v. State, 98 Tex. Cr. R. 314, 265 S.W. 891, the district attorney said:

"Gentlemen, if you should fail to convict this defendant, the Statute of Liberty would hang her head in shame; you had as well tear down the courthouse and plant the ground upon which it stands in a corn patch so they could use it, and manufacture liquor and serve it to the public; the sheriff of this county had as well surrender his commission, because his acts will be for naught."

And the court said:

"Though this flight of imagination may not with propriety be cited as a model for eloquence nor an example of logic, it cannot be assumed that the verdict of the jury was responsive to the extravagant statement of counsel rather than to the facts adduced upon the trial. In the reviewing court, the verdict having the sanction of the trial court and the evidence heard are important elements in estimating the effect of remarks of counsel which, though improper, are not obviously harmful."

In Williams v. State, 122 Tex. Cr. R. 269, 54 S.W. 2d 121, the district attorney said:

"If you go out and turn this defendant loose, then you might as well tear the law books up, burn court house down, destroy jails, and let everybody go free and do as they please."

And the court held that no reversible error was shown, quoting the Coats case above.

In Bushiey v. State, 128 Tex. Cr. R. 1, 679 S.W. 2d 124, the district attorney said:

"If you turn the defendant loose you might just as well burn the courthouse, tear up the law books and fire District Judge Reuben Hall."

The objection was overruled by the trial court, and this court quoting the Coats case, declined to reverse because of said argument.

In Cross v. State, 129 Tex. Cr. Rep. 526, 89 S.W. 2d 217, the district attorney said:

"If you acquit this defendant we might as well burn the court house and deed the land back to the Indians, because we won't need it any more."

The court, in affirming the case, re-affirmed the rule announced in the Coats case. A search of Texas Digest, Criminal Law 723(3), fails to reveal that the Coats case has been overruled.

In the case at bar it will be noted that counsel at least predicated his extravagant argument upon his opinion from the evidence in the case.

We decline to accept appellant's invitation that we either approve the argument complained of or reverse the conviction. We have stated that we do not approve thereof and feel that in good taste the objection thereto should have been sustained by the trial court; but in line with our decisions set forth above and in view of the record in this case, we do not feel that reversible error is shown.

Appellant's motion for rehearing is overruled.