Reversed and remanded.

## JOSEPH WHITE v. THE STATE.

Under the Statute of 1848, which divided the crime of murder into murder in the first and murder in the second degree, and declared that " all murder committed " by poison, starving or torture, or other premeditated and deliberate killing, or " committed in the perpetration or in the attempt at the perpetration of arson, " rape, robbery or burglary, is murder in the first degree, and all murder not " in the first degree is murder of the second degree," and required the jury to find whether it was murder in the first or second degree, an indictment charging that the murder was committed "feloniously, maliciously, wilfully, premeditatedly and of his malice aforethought," was held sufficient to charge murder in the first degree ; and the Court said an indictment in the Common Law form was sufficient.

White v. The State.

Where the order for a special venire in a capital case, directed that thirty-six "persons" be summoned, &c., and the writ commanded the Sheriff to summon thirty-six good and lawful men of the county, and the Sheriff returned that he had summoned the following named "jurors," on objection, for the first time in the Supreme Court, that the order did not direct thirty-six good and lawful men of the county to be summoned, it was held there was no error.

Where the entry, in a capital case, stated that "thereupon came a jury of good and lawful men, to wit: (giving the names,) who having been duly empanneled, tried, sworn," &c., and, on appeal, it was objected that the entry did not state that the jurors were "elected," the objection was not thought to require notice.

Where the order for a special venire in a capital case reads, "then and there to "serve as jurors in a certain suit pending before said Court, wherein the " State of Texas is plaintiff and Joseph White defendant," and it was object- ed on appeal, that it did not state the case for the trial of which the jurors were summoned, as, The State of Texas against Joseph White, Indictment for murder, the objection was not thought to require notice.

Where, on appeal in a capital case, it was objected that the names of three of the jurors did not appear on the special venire, and that the record did not show any order for summoning bystanders, the Court said the objection should have been made when the jurors were called and offered to the prisoner.

It is good challenge for cause, on the part of the State, in a capital case, that the person called as a juror has conscientious scruples against finding a verdict of guilty, where the punishment is death.

The judgment in capital cases, where an appeal is taken, need not conform to Common Law precedents where there was no appeal, but was held to be suf- fficient, where, the prisoner being led to the bar, it stated that "It is con- " sidered by the Court that the said Joseph White be taken to the jail of the " said county of Liberty, from whence he came, and thence to the place of exe- " cution in said county, and there be hanged by the neck until he is dead ; but " he having given notice of appeal, the time of execution is reserved, and he is " remanded to the jail of Liberty county, there to remain until his appeal shall " be decided by the Supreme Court."

Appeal from Liberty. Tried before the Hon. Peter W. Gray.

Indictment for murder, charging it to have been done " feloni- ously, maliciously, wilfully, premeditatedly and of his malice aforethought."

At the Fall Term, 1854, the defendant being in custo- dy, the Court ordered " that a *venire facias* issue to the " Sheriff of Liberty county, returnable forthwith, to summon

" thirty-six persons to appear at the Court House in the town
" of Liberty in the county of Liberty, forthwith, to serve as
" jurors in the above cause of The State of Texas against Jo-
" seph White for the murder of Levi Barrow, and that a copy
" of the indictment and a list of the jurors summoned be de-
" livered immediately to said White." The *venire facias* read
as follows :

State of Texas, } The State of Texas to the Sheriff of said
County of Liberty. } county, greeting. You are hereby com-
manded to summon thirty-six good and lawful men of your
county, to be and appear forthwith, before the Honorable the
District Court for said county, now in session, at the Court
House in the town of Liberty, then and there to serve as ju-
rors in a certain suit pending before said Court, wherein the
State of Texas is plaintiff and Joseph White defendant. Herein
fail not, &c., and was returned that in obedience thereto the
Sheriff had " summoned the following named jurors," &c., and
was accompanied by the Sheriff's certificate, that he had de-
livered to the defendant a list of the said jurors, and a certified
copy of the indictment. Arraignment and plea of not guilty.
Trial and verdict of guilty of murder in the first degree. The
names of the last three named jurors of the panel, were not on
the special venire ; nor did it appear how they were sum-
moned. The entry of the trial stated that the prisoner was
led to the bar and announced himself ready for trial, and there-
upon came a jury of good and lawful men, to wit : (giving the
names,) " who having been duly empanneled, tried and sworn,
and having heard the evidence," &c.

It appeared by bill of exceptions, that in empanneling the
jury, the District Attorney put to three of the persons sum-
moned on the special venire, to wit : (naming them,) the fol-
lowing interrogatory : Have you conscientious scruples about
finding a person guilty, where the punishment is death ? to
which question the defendant objected ; the objection was
overruled, to which the defendant excepted ; and each of said

persons having answered said question in the affirmative, the District Attorney challenged them for cause, which challenge was sustained, and said persons were not passed to the prisoner as jurors, to which ruling the defendant excepted.

The charge of the Court defined and explained at some length, the nature of the crime of murder, and the difference between murder in the first and second degree; but as the assignment of error thereon was general, and the brief of counsel was likewise general in its objections, and the point was not noticed by this Court, it is not considered necessary to print the charge. There was a full statement of facts, but no point being made thereon, it is omitted.

Motion for new trial on the ground that the verdict was not warranted by the evidence; is contrary to law; the Court erred in charge to the jury; in overruling defendant's objections to testimony.

Motion in arrest of judgment, because the verdict was not authorized by law, under the indictment; because the indictment does not set forth one of the necessary facts or constituents of the offence of murder in the first degree.

Final entry as follows:

The State of Texas,  
  vs.     Murder.  
Joseph White.

This day came again the State of Texas by her District Attorney, and the prisoner Joseph White having again been led to the bar in the custody of the Sheriff, and the defendant by his counsel moves for a new trial and in arrest of judgment, which motions being heard and considered, were overruled by the Court; wherefore it is considered by the Court, that the said Joseph White be taken to the jail of the said county of Liberty, from whence he came, and thence to the place of execution in said county, and there be hanged by the neck until he is dead; but he having given notice of appeal, the time of execution is reserved, and he is remanded to the jail of Liberty

county, there to remain until his appeal shall be decided by
the Supreme Court.


*B. C. Franklin*, for appellant.    I.—Premising that there is
no offence known to the Common Law of England, as now
practiced and understood, but has its appropriate penalty pre-
scribed by statute ; (See Sec. 58, 81, of the Act of the 9th
Feb., 1854, Pamp. Laws, p. 70 ;) that no Common Law penalty
can be imposed by the Judgment of any Court in this State ;
(Sec. 59 of the above Act ;) it follows that a Common Law in-
dictment would not be good, and that every indictment must
be framed in reference to the constituents of every offence as
defined in our statutes. (Hawkins P. C. Bk. 2, ch. 25, Sec.
116 ; Hale, 190 ; Chitty, C. L. Vol. 1, p.    ; Act 9th Feb. 1854,
Pamp. Laws, p. 70, Sec. 81, 58, 59.)

The indictment under consideration concludes " against the
form of the statute," and should contain every averment neces-
sary to constitute the offence of murder in the first degree.

The following may be regarded as established principles in
Texas, as well as in England :

" If any fact or circumstance, which is a necessary ingredient
" in the offence, be omitted in the indictment, such omission vi-
" tiates the indictment, and the defendant may avail himself of it
" by demurrer, in arrest of judgment, or on writ of error."
(Chitty. C. L. Vol. 1, p.    )

" All the facts and circumstances which constitute the offence,
" must be stated with such certainty and precision that the de-
" fendant may be enabled to judge whether they constitute an
" indictable offence or not ;  in order that he may plead or de-
" mur ;  or what *species of offence* they constitute, to enable him
" to prepare his defence ;  and that there may be no doubt as to
" the judgment which should be given in case of conviction."
(Chitty. C. L. Vol. 1, p.    ;  Bush v. Republic, 1 Tex. R. 455 ;

Burch v. Republic, 1 Id. 608 ; Williams v. State, 14 Id. 98 ; 5 Term R. 623.)

" The want of a direct allegation of any thing material in " the description of the substance, *nature* or *manner* of the " crime, can not be supplied by any intendment or implication " whatever." (Hawkins P. C. Bk. 2, ch. 25, Sec. 60.)

" In all criminal prosecutions the accused shall *enjoy* [*the* " *right* to be informed of the *nature* and cause of the accusa- " tion." (6th add. to and amend. of the Con. U. S.)

The 69th Sec. of the Act of the 9th Feb., 1854, (Pamp. Laws, p. 70,) requires " that the indictment should charge the offence " with sufficient certainty for judgment to be *given thereon* ac- " cording to the very right of the case."

The "nature of an accusation" signifies the essence, essential qualities or attributes of the accusation or offence, which constitutes it what it is. There are two varieties or degrees in the offence of murder, each variety or degree having its essential attributes. Without touching the Common Law definition of murder, the Legislature have added one element to constitute murder in the first degree,—not necessary at Common Law to constitute the offence of murder, to wit, deliberation,— they have declared, that there is and shall be such an offence as murder in the first degree, and murder in the second degree. They have drawn no distinction between express and implied malice,—for, by the terms of the statute, cases of implied malice are made murder in the first degree.

The Constitution securing to every citizen prosecuted " The right to be informed of the nature and cause of the accusation," and the due course of the law of the land giving the right to know the *species* of offence with which he is charged, can the Court disregard these safeguards (for the security of the accused,) and when one species of offence is charged, give judgment for a different and higher species of offence, more aggravated in its nature, and in which the highest and last penalty human ingenuity can inflict is to be the result of the

judgment? The words "premeditated and deliberate killing" embrace the statutory description and ingredients necessary to constitute murder in the first degree. The words premeditated and deliberate are not synonymous; "premeditated killing" and "deliberate killing" do not convey the same idea; and both are necessary to constitute murder in the first degree. When used in the Act and in an indictment, they indicate the existence of certain facts necessary to be proved on the trial; and according to the ruling of this Court, in the case of Jones vs. The State, (12 Texas R.,) the onus of proving the facts necessary to make the offence murder in the first degree rests on the State.

In the case of the State v. Sam. M. Williams et al., decided at a former Term of this Court, (14 Tex. R. 98,) the Court say, "But it may be said that according to some of the author-"ities cited as exceptions to the general rule, it is said, that " those facts must be proven, but need not be averred. *Shall* " *we follow such authorities, so unreasonable,* so well calculated " to surprise the accused? or shall we not rather, with Chief " Justice Gibson, regard the description of the offence as of " the last importance to the innocent, for it is that which marks " the limits of the accusation, and fixes the proof of it."

To say that the Courts in other States have given a construction to similar statutes, and that the ruling of the Court in this case is sustained by such construction, is not and should not be conclusive in the Courts of this State. Our statute is not identical with the statutes of Tennessee, Pennsylvania, or any other State, the reports of the decisions in the Courts whereof I have had an opportunity of examining. In Tennessee, by an express provision, a Common Law indictment is declared to be sufficient to charge murder in the first or second degree. In all of those States, the word deliberate precedes the word "premeditated," and the construction is given to the word deliberate, as the action of the mind in deciding the party to kill; the word premedited embracing the idea of fore-

thought and determination to kill. The word premeditated in our statute preceding the word "deliberate;" the forethought and determination to kill exists independent of it, and deliberation must refer not only to the conclusion of the mind, but to the manner of executing the foregone determination to kill. It is by this construction alone that you can give effect to the statute, and draw a distinction between murder in the first and second degree.

II.—As to the second point : by our statute regulating juries, it is provided that when from challenges or any other cause, there shall not be a jury to determine any cause, civil or *criminal*, which shall be called for trial, the Sheriff, or other officer, shall, by *order of the Court*, return jurymen of the bystanders, sufficient to form or complete the panel. Yet three of the jury, sworn in this case, are not named in the venire, nor does it appear from the record that they were summoned as bystanders by any order of the Court.

The record does not state that the jurors were " elected,"but only that they were impanneled and sworn. The whole proceeding in impanneling the petit jury, was irregular and without the authority of law. The order of the Court for the special venire does not direct thirty-six good and lawful men of the county of Liberty to be summoned as jury, but " thirty-six persons." (1 Baldwin, p. 78.) The venire issued by the Clerk does not state the case for the trial of which they were summoned, (6 Binney,) as, The State of Texas vs. Joseph White, indictment for murder ; but states, " in a case wherein the State of Texas is plaintiff and Joseph White defendant." The Sheriff's return does not show that the persons summoned were good and lawful men of the county of Liberty, but that he summoned " the following jurors."

These may be said to be irregularities, and waived by the party ; of no consequence—that they do not affect the merits of the case. Where life hangs on the issue, do irregularities enter into and form any part of the " due course of the law of the land ?"

III.—As to the third point taken, upon the allowance of the challenge of jurors for cause, I refer to the Opinion of Justice Gibson in the case of Com. vs. Lesher, 17 Serg. & Rawle, 160.

IV.—As to the fourth position—test the charge by the language of the statute, and it cannot be sustained.

V.—As to the fifth point suggested. In judgments or sentences of death in capital cases, our statute prescribes the penalty, but the Common Law furnishes the form of the judgment or sentence. The form is substance in such cases, and is in the line of safe precedents not to be departed from. (Chitty, C. L. 720 ; 4 Black. Com., Appendix.)

The judgment does not purport to give the language of the Judge, passing the sentence in person then and there in the presence of the prisoner. The judgment is given by the Clerk for the Court. It is given, not because the accused had been indicted, arraigned, plead and been found guilty, and because he had nothing to say why sentence of death should not be passed against him ; but because the Court overruled a motion for a new trial, &c. The record must not state one reason or cause for the judgment, when that reason is insufficient to sustain the judgment. For in this matter, nothing can be taken by intendment ; and we are not at liberty to say the record intended to refer the conviction to the verdict of the jury and the anterior proceedings in the trial. Among many other substantial defects, the record does not show that the accused was asked by the Judge, before the judgment was entered by the Clerk, (I will not say pronounced by the Court,) "whether he had any thing to say why sentence of death should not be pronounced against him ?" and that the accused "had nothing further than he had said." (4 Harris, Penn. R. 133 ; 6 Barr, 384.)

I cannot conclude presenting this case in more forcible language, than that of a learned Judge, (6th Barr, 384.) "We "may safely presume as individuals, that in tranquil times and "in an enlightened city, the conduct of the trial was all right ; "but, *as a Court*, we can look *only to the record ;* for this re- "cord and judgment will be recorded for a precedent for other

"times; and if we let in PRESUMPTIONS to supply omissions "and defects in records, it will by and by be deemed scarcely "necessary to show by the record any of the important safe-"guards of a trial by jury; and the Common Law forms, stout-"ly asserted as a shield of liberty, by the Hampdens, Russels "and Sidneys of other days, will lose their value. But the "forms are not merely a shield against despotism of kings; for "there is occasionally a despotism in all countries, a despotism "whose terrible voice is heard in tumults and excitements—in "the rage of unrestrained and impetuous will. It is then that "the stern and inflexible rules of the *Common Law trial by* "*jury* will best prove their importance and value. In the last "ten or twenty years, there have been *mock trials and bloody* "*executions*, without the forms of law in these States, which "would have been deemed impossible in the primitive days of "the Republic."

*H. N. & M. M. Potter*, also, for appellant.

*Attorney General*, for appellee. No one, acquainted with the practice in this State, can doubt that the three jurors were summoned, by order of the Court, from the bystanders, upon the special venire being exhausted, by challenges, &c. It has never been our practice to put such an order on the record.— But if this exception were good at all, it ought to have been taken at the time the persons in question were presented as jurors, and then it could have been obviated. Not having been taken before or at the trial, or at any time in the Court below, it certainly comes too late on appeal, and the presumption must be indulged here that the matter was rightly done at the proper time. It would have come too late even after verdict, in the District Court. (Rex. v. Hunt, 4 Barn. and Ald. 430; Amherst v. Hadley, 1 Pick. R. 38; People v. Ransom, 7 Wend. R. 417; Cole v. Perry, 6 Cow. R. 584.)

But the recital of the judgment entry, in the District Court, "that the jury was of good and lawful men, *duly impanneled*,"

&c., is a sufficient answer to this, and all other objections to that body, not reserved by bill of exceptions, or in some other mode of exception.

II. As to the right of the jury to find the verdict of " guilty of murder *in the first degree*," upon this indictment, a conclusive answer to the objection is to be found in the Opinion of this Court in the case of Gherke v. The State, 13 Tex. R. 568, in which the indictment was in precisely the same form with this.

III. As to the correctness of the ruling below, in holding " conscientious scruples against finding a verdict of guilty in a case in which the punishment is capital," a sufficient ground of challenge for cause to persons offered as jurors, it seems to be so well settled on authority as not to admit of further discussion. (Whart. Am. Crim. Law, 857 ; Com. v. Lesher, 17 Serg. and R. 155 ; People v. Damon, 13 Wend. 351 ; Jones v. The State, 2 Blackf. 475.)

LIPSCOMB, J. The appellant was tried and convicted of murder in the first degree, and a motion for a new trial and arrest of judgment was overruled, and judgment awarded ; but the prisoner having appealed to this Court, the time of execution was not fixed. Several grounds have been taken in this Court, by the appellant's counsel, on which a reversal of the judgment is claimed.

The first, the supposed defect in the indictment, was well argued by counsel in the case of Gehrke v. The State, at the last Term, (13 Tex. R. 568 ;) and after mature consideration, the indictment was held to be good and sufficient, without following the precise words of the statute, " premeditated or deliberate." We regarded malice express, as the gist of the offence of murder in the first degree, and that it had been premeditatedly or deliberately done, as the evidence or indicia of that malice. The charge in the indictment against the appellant, is, " feloniously, wilfully, premeditatedly and of his malice

aforethought," omitting the word in the statute, "deliberate."
We are satisfied with the decision on this question, made at
the last Term, and we will not alter or modify it in this case.

The objection to the writ of venire facias, and to the Sheriff's
return thereon, is not believed to be supported by the record,
and will not be noticed.

The objection, that three of the jurors, who passed upon the
guilt of the prisoner, do not appear to have been summoned
on the venire, nor do their names appear thereon, cannot be
taken for the first time in this Court. The objection should
have been made, when called, and offered to the prisoner.—
The jury was sworn, and no objection made. It is most prob-
able, that they were called after the venire had been exhaust-
ed, which accounts for their names not appearing on it.

The only objection, believed to be entitled to any considera-
tion, is the rejection of the persons offered as jurors, upon the
ground of their having conscientious scruples against capital
punishment. On this question there has been some conflict in
the opinions of eminent jurists. It would seem, however, that on
principle it would be difficult to make such persons good,
impartial and indifferent jurors : and to put men on the
jury, whose conscientious scruples would override their oath,
would result inevitably in either a mistrial or an acquittal, ir-
respective of the facts proven. The religious scruples of every
citizen are entitled to respect, and no man should be placed in
a position where he is required to do violence to his con-
science, or to commit perjury, or to disregard the obligation
of an oath. If placed in that position, against his will, he
would be apt to regard his own conscientious scruples of high-
er obligation than his oath. A man's sincere, conscientious
scruples are entitled to great indulgence, and it is for his pro-
tection, the question is asked. There is better reason for ask-
ing it and for making it a sufficient ground for setting him
aside as not a competent juror, than for asking the juror, when
offered, if he had formed and expressed an opinion of the guilt

or innocence of the accused, or if he had any prejudice against him.    In these cases, the very questions would imply a charge against the juror, of the impropriety of having so formed an opinion, or of having harbored and nourished in his heart ill will towards his fellow man ; and some eminent jurists have therefore concluded that a juror should not be required to respond to such enquiries.    We cannot believe that it is improper to ask the juror if he entertains such scruples, and if answered in the affirmative, he ought to be set aside as not a good juror.

We find nothing in the record in this case, to authorize us to reverse the judgment ; it is therefore affirmed.

Our attention has again been directed to the record in this case, and there is but one point presented, not noticed in the above Opinion, that we regard as requiring of us any notice. It is insisted by the counsel for the appellant, that it does not appear, that he had been asked in the Court below, whether he had anything to say, why sentence should not be passed on him ?    In trials at common law, for murder, on conviction, the prisoner had no right to an appeal.    Under our laws an appeal is made a matter of right, and where an appeal is claimed, the Court does not pass sentence ; the judgment is entered on the verdict, but no sentence is passed until after the appeal has been tried in this Court, and certified to the Court below. If affirmed, the Court, at its first Term thereafter, passes sentence and awards the execution thereof.    The prisoner will then be asked if he has anything to say why sentence should not be passed on him.    He has had the benefit of a motion in arrest of judgment and for a new trial, before the case came into this Court, and this is all that of right he could claim, before the appeal was taken.    We see no legal ground for a different judgment, than the one entered in accordance with our original Opinion.

Judgment affirmed.