# FEBRUARY 12, 1936

CHARLES EDGAR ANDERSON v. THE STATE.

No. 17693.   Delivered October 23, 1935.
Rehearing Denied February 12, 1936.

The opinion states the case.

*Rogers & Spurlock,* of Fort Worth, and *J. V. Patterson,* of Decatur, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment was assessed at confinement in the state penitentiary for a term of fifteen years.

The testimony adduced upon the trial, briefly stated, is as follows: In the early part of the month of July, 1934, Mrs. Anderson, wife of appellant, was visiting her sister, Mrs. Dan Jackson, at Lake Bridgeport, Texas. On the 5th day of July, she went to a small mercantile establishment owned and conducted by the deceased, U. E. ("Bess") Byers, with a view of purchasing five cents' worth of ice, having theretofore obtained ice from him. On this particular day, when she asked for ice, he told her that he did not have any to spare; that he was not in the ice business and only had enough to cool water for his customers. She seems to have been rather insistent in her demands, went to the ice box, and undertook to take some ice. He shoved her away, whereupon she became angry and called him vile names. He ordered her out of his place of business, took hold of her shoulder and shoved her toward the door. She left and returned to the home of her sister, Mrs. Jackson, and

from there went to Decatur, where she made a complaint against the deceased, charging him with aggravated assault, and, on the same day, wrote a letter to her husband, who resided at Fort Worth, Texas, to come down with one of the boys and give U. E. ("Bess") Byers a whipping for having slapped her. The letter was received by appellant late in the evening and on the next morning he and his son, Edgar R. Anderson, armed with a shotgun and a Winchester rifle, proceded to Lake Bridgeport to the home of Mrs. Jackson where he and his son had a conference with Mrs. Anderson. From there they went to the store of deceased, carrying their arms with them. Upon arriving at the store they found the daughter of deceased in charge, of whom they inquired of the whereabouts of her father. She told them that he had gone to the lake but she expected him back in a very short time. She observed that they had guns and asked them if they intended to do any hunting. They told her that they did, whereupon she informed them that there were many squirrels in the timber about the lake and, if they were good shots, they might kill some, but they did not go. Appellant took a position in the store from where he had a clear view of the road leading to the lake. After the lapse of some twenty minutes or more appellant saw a car coming from the direction of the lake and inquired of deceased's daughter whether or not that was her father. At first, she was uncertain but as the car drew nearer she told him it was her father. Appellant and his son immediately walked out of the store and, when the deceased drove his car in front of the store and stopped, appellant got on the running board of the car and began to beat deceased on the head with a shotgun, while his son, Edgar, struck him with a rifle, during which time the deceased held his hands over his head to ward off the blows and tried to get out of the car. As soon as he got out of the car he ran around to the back of the store when appellant shot him in the back of the thigh. Deceased then procured a pistol, came around the store and shot appellant in the leg. Edgar, the son of appellant, had by this time taken shelter behind a tree from where he shot the deceased with a rifle, killing him instantly, and when the deceased had fallen to the ground he said, "That is the shot that got him, Dad." The testimony of the appellant and his son is to the effect that upon receiving the letter from Mrs. Anderson they left early the next morning, taking a shotgun and rifle with them to shoot rabbits, but they didn't shoot any; that upon arriving at Mrs. Jackson's home where Mrs. Anderson was visiting, they had a conference with her in

which she related to them how the deceased had treated her. They also learned from parties who were present that Mr. Byers was a high-tempered and dangerous man. From there they went to the store of deceased for the purpose of obtaining an explanation of the affair and to induce him to apologize to Mrs. Anderson; that if deceased did so he would urge a dismissal of the charge made against him by appellant's wife; that when the deceased drove up to the store he, appellant, approached him and asked him if his name was Byers and if he had slapped his (appellant's) wife, to which deceased replied that he was, followed with the remark, "What are you going to do about it?" The deceased then ran his hand into the bosom of his shirt and as he did so appellant struck him on the head with a rifle, whereupon deceased jumped from the car and a struggle ensued between the three in which deceased drew a pistol from his shirt, pointed it at appellant, which appellant knocked down when the pistol fired, striking him in the leg. At this time his son, Edgar, who had the shotgun, shot the deceased; that, during all of this time the appellant had not fired a shot; that as the deceased came around the store Edgar, who had by this time obtained a rifle (and as deceased returned) shot and killed him after deceased had fired at them. Edgar R. Anderson, the son of the appellant, in substance gave the same testimony. Mrs. Anderson, who testified in behalf of appellant, admitted that she wrote the letter urging appellant to come down with one of the boys to give deceased a whipping.

We have made a rather extended statement of the facts because of the appellant's insistence that the court's charge on principals was not supported by any testimony. The State's testimony shows that both the appellant and his son shot the deceased and that both shots took effect; that they were acting together with a common intent and a common purpose is sufficiently shown by their coming from Fort Worth heavily armed for the purpose of finding the deceased and whipping him, and, if necessary, to kill him.

Bills of Exception Nos. 1, 2, 3, and 4 reflect the following occurrence: After the State and defendant had accepted a number of jurors without interrogating them as to whether they had conscientious scruples against the infliction of the death penalty as a punishment for crime, the State then proceeded to interrogate all subsequent jurors with reference thereto and upon receiving an affirmative answer challenged such jurors for cause, which challenges were sustained by the court, to which appellant objected because the State, in failing or

declining to make such inquiry of the prospective jurors theretofore examined, waived its right to challenge the jurors for cause. The State has a right under Art. 616, C. C. P., to challenge jurors for cause. The fact that this challenge was waived as to some of the jurors would not preclude the State from exercising its right to challenge any of the other jurors for cause. See Merkel v. State, 75 Texas Crim. Rep., 551, 171 S. W., 738.

By Bill of Exception No. 5 appellant complains of the action of the trial court in sustaining the State's objection to the proffered testimony of Edgar R. Anderson that his father, the appellant, did not aid him by act or encourage him by word in shooting the deceased. It clearly appears from the record that the witness had already testified in detail to all that transpired at the time of and prior to the time that the deceased was killed. The testimony which the defendant sought to elicit from said witness was an attempt to invade the province of the jury whose duty it was to determine this question from the testimony detailed.

By Bill of Exception No. 6 appellant complains of the action of the trial court in overruling his objection to the court's charge on principals, contending that the testimony did not support and justify such charge. We have carefully examined the testimony adduced upon the trial, as reflected by the statement of facts, which unquestionably shows that the appellant and his son left Fort Worth early in the morning armed with a shotgun and a rifle; that they came at the request of Mrs. Anderson who urged them to whip the deceased. They went to the store armed, inquired for the deceased, were together looking for him and when the deceased appeared at the store they both went to his car. They both struck him with firearms and when he tried to evade them appellant shot him in the back with a shotgun; whereupon deceased ran around the store and appeared on the other side of the building; that the son, Edgar, shot him in the head with a rifle and then remarked, "That is the shot that got him, Dad." It occurs to us that the testimony clearly raised the issue of principals.

Appellant criticizes the court's charge on the ground that the court failed to instruct the jury on the converse of the law of principals. An inspection of the charge discloses that the court instructed the jury as follows: "You are further charged that the mere presence of the said C. E. Anderson would not make him a principal and though you find that he was present at the time of the killing (but) if you fail to find that he spoke

some word or did some act, or acts, or made some gesture to the said Edgar Anderson, or if you have a reasonable doubt thereof, you should not find him to be a principal, and find him not guilty and so say by your verdict."

This charge, when considered in connection with the charge on principals was, we think, sufficient as against the objection urged to it.

Appellant also complains of the court's charge on his defensive theory because the court failed to instruct the jury in connection therewith the doctrine of reasonable doubt. Appellant's objection is as follows: "The Court has not instructed the jury in connection therewith that if they believe from the evidence, or have a reasonable doubt thereof that the said Edgar Anderson, son of the defendant herein, killed the deceased, or if they believe from the evidence or have a reasonable doubt to the effect that C. E. Anderson, did not aid by acts or encourage by words said Edgar Anderson in killing the deceased, then, they should acquit the defendant."

It will be observed from a preceding paragraph of the court's charge, which we have hereinabove quoted, he instructed the jury that if they found the appellant was present at the time Edgar Anderson killed deceased, but failed to find that he spoke some word or did some act or acts or made some gesture to Edgar Anderson, or if they had a reasonable doubt thereof, they should find him not to be a principal and find him not guilty. It occurs to us that the court submitted the doctrine of reasonable doubt in connection with his charge on principals and in addition the court, in his charge, applied the doctrine of reasonable doubt to the whole case. We think this was sufficient under the following authorities: McCall v. State, 14 Texas App., 355; Ashlock v. State, 16 Texas App., 23; Farris v. State, 117 S. W., 798; Andrews v. State, 275 S. W., 1024; Webster v. State, 289 S. W., 689.

In the case of Andrews v. State, supra, this court, speaking through its Presiding Judge, said: "The rule, requiring that the law of reasonable doubt be embraced in the paragraph of the charge submitting the affirmative defense, is not so imperative or inflexible as to demand a reversal in every instance in which the rule is not observed."

In the instant case the jury were instructed by the court if they failed to find that the appellant spoke some word or did some act or acts or made some gesture to Edgar Anderson, or if they had a reasonable doubt thereof, they should find him not to be a principal and find him not guilty. The testimony

of the State, as well as that of the defense, established the fact that Edgar Anderson, the son of the appellant, killed the deceased; that appellant was present and acting in conjunction with him. Therefore, when the court applied the doctrine of reasonable doubt of appellant's connection as a principal with the offense charged, the jury could not have mistaken the application of the principle laid down in the charge above quoted, and they must have given it effect when they considered the court's instruction on appellant's defensive theory. Appellant did not fire the shot which killed the deceased; therefore his connection with the offense depended on whether he was a principal as that term was defined by the court in his charge to the jury. However, we do believe that the better practice is to apply the doctrine of reasonable doubt in connection with the defendant's defensive theory. The first few lines of the court's charge in the paragraph submitting appellant's defensive theory might have been expressed in more apt and explicit words.

Finding no error which would call for a reversal of this case, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In was the State's contention, supported by evidence, that appellant and his son (Edgar R. Anderson) began the difficulty by beating deceased over the head with guns before he got out of his automobile; that as he ran from them appellant fired at him with a shot gun, wounding deceased in the thigh; that deceased ran behind the store, but returned immediately with a pistol in his hand and fired at appellant, wounding him in the leg, and that appellant's son then shot deceased through the head with a rifle. It was appellant's contention that deceased was the aggressor and drew a pistol and fired first, wounding appellant in the leg; that appellant's son then fired at deceased with the shot gun, striking him in the thigh, and later took the rifle from appellant and then with it the son shot deceased through the head. There was no evidence that the shot gun wound was fatal, whether fired by appellant or his son, but all the evidence shows that it was the shot through the head fired by appellant's son

which resulted in death. Appellant denied firing either with the shot gun or rifle, and the son admitted on the trial that he fired both shots. It thus appears both from the State's evidence and that introduced by appellant that it was the son who actually did the killing. We make this condensed statement of the facts, believing it has material bearing on the exceptions to the court's charge re-urged by appellant as presenting such error as calls for a reversal.

The paragraphs of the charge as found in the transcript are not numbered but for convenience in discussing it we have designated the paragraphs by numbers.

The charge from the first to eighth paragraphs, inclusive, contains the definition of murder, malice, etc., and the submission to the jury of murder with and without malice upon the theory of whether the killing was done by appellant himself. The ninth paragraph is a general and correct definition of "principals" not necessary to be set out here. The tenth and eleventh paragraphs are as follows:

(10) "If you believe from the evidence, beyond a reasonable doubt, that Edgar Anderson on the date and day alleged in the indictment, killed the said U. E. Byers and further believe the defendant, C. E. Anderson was present and knowing the unlawful intent, if any, on the part of the said Edgar Anderson and at said time and prior to the said killing, did some act or encouraged by words or gestures the said Edgar Anderson in killing the said deceased he would be guilty as a principal."

(11) "You are further charged that the mere presence of the said C. E. Anderson would not make him a principal and though you find that he was present at the time of the killing if you fail to find that he spoke some word or did some act, or acts, or make some gesture to the said Edgar Anderson, *or if you have a reasonable doubt thereof,* you should not find him to be a principal, and find him not guilty and so say by your verdict."

It will be observed that in the eleventh paragraph, advising the jury under what circumstances appellant would not be a principal, the doctrine of "reasonable doubt" is applied directly to such defensive issue. The twelfth and thirteenth paragraphs are general statements of the law of self-defense. The fourteenth paragraph is an application of the law of self-defense, telling the jury in substance that if appellant killed deceased and that the latter had made or was about to make an attack on either him or his son which caused him to have apprehension for his own or his son's safety they should acquit appellant.

The fifteenth paragraph of the charge is as follows: (15) "If you fail to find, beyond a reasonable doubt, that the defendant killed U. E. Byers, but further find, beyond a reasonable doubt, from the testimony that on the day and date alleged said Edgar Anderson killed the deceased you cannot convict the defendant unless you find him guilty as principal offender as that charge on principals is herein defined to you, and then you could not find defendant guilty as such principal if you believe that on said date said Edgar Anderson killed the deceased that he the said Edgar Anderson believed at the time of so doing deceased had made an attack or was about to make an attack on him or his father, C. E. Anderson, which, from the manner and character of it and the relative strength of the parties and his knowledge of the character and disposition of the deceased caused him to have a reasonable expectation or fear of death or serious bodily injury to himself or to his father, C. E. Anderson, and acting under such reasonable expectation or fear of death or of serious bodily injury to himself, or for the safety of his father, said Edgar Anderson killed the deceased, you will acquit the defendant."

It is to the above-quoted paragraph of the court's instructions that appellant directed numerous exceptions. (a) That it shifted the burden of proof from the State to appellant in that the burden was not on appellant to prove that his son killed deceased, but that the burden was on the State to prove either that appellant did the killing, or that appellant was a principal if the killing was done by his son. (b) That the court "has not instructed the jury in connection therewith that if they believe from the evidence or have a reasonable doubt thereof, that the said Edgar Anderson, son of the defendant herein, killed the deceased, or if they believe from the evidence or have a reasonable doubt to the effect that C. E. Anderson, did not aid by acts or encourage by words said Edgar Anderson in killing the deceased, then, they should acquit the defendant, irrespective of whether or not Edgar Anderson was justifiable in killing the deceased under the circumstances." (c) That the law of principals was not sufficiently applied. (d) That said instruction was a comment by the court on the weight of the evidence.

The expression in the beginning of the instruction, viz:— "If you fail to find, beyond a reasonable doubt, that the defendant killed" deceased, is not to be commended, but under the facts as related in the original opinion, and concisely re-stated

herein, it could in no way have resulted in injury to appellant, because under the undisputed facts appellant did not fire the shot that resulted in deceased's death. We do not believe the charge shifted the burden to appellant, and requires him to prove beyond a reasonable doubt, or to prove at all, that his son killed deceased. The reasonable doubt upon the question of whether appellant acted as a principal with his son in the killing had been explicitly presented in paragraph eleven heretofore set out. Neither can we regard paragraph fifteen as containing any expression from the court which could be construed as a comment on the weight of the evidence. We believe the paragraph of the charge complained of, when construed in connection with the remainder of the charge means, and conveyed to the jury the information, that if they believed appellant did not kill deceased, but did believe from the evidence beyond a reasonable doubt that appellant's son killed him, they could not convict appellant, unless they found him guilty as a principal under the law upon that subject as theretofore given them, in paragraphs ten and eleven, and that even then they could not find him guilty as a principal if they believed appellant's son killed deceased in defense of either himself or appellant.

We have re-examined appellant's original brief in connection with his motion for rehearing, and the authorities cited in both, among them being: Regittano v. State, 96 Texas Crim. Rep., 477, 257 S. W., 906; Ford v. State, 105 Texas Crim. Rep., 44, 285 S. W., 614; House v. State, 76 S. W. (2d) 511. Many other cases will be found cited in opinions in the cases mentioned. We are in accord with the holding that a charge should not be so worded as to shift the burden of proof to a defendant, and that ordinarily the question of reasonable doubt should be given in connection with an affirmative defensive charge, and that the failure to do so raises a serious question when such failure is pointedly called to the trial court's attention. It will be observed that the question of reasonable doubt is not incorporated in the charge giving the son of appellant the right to act in defense of himself or appellant, but no specific objection is found pointing out to the trial court such omission. See Art. 658, C. C. P.

We have endeavored to appraise the charge of the court in its entirety in view of the evidence, as we understand the record, and giving effect to Art. 666, C. C. P., we do not believe that any criticism of the charge goes to the extent of showing

that anything therein complained of as error was calculated to injure the rights of appellant.

The motion for rehearing is overruled.

*Overruled.*