Melvin Stuart PITTMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 41393.

Court of Criminal Appeals of Texas.

July 24, 1968.

Rehearing Denied Oct. 30, 1968.

Second Rehearing Denied Dec. 11, 1968.

Charles Dickens, (Court Appointed on Appeal), Dawson H. Davis, Fort Worth, (Court Appointed on Appeal), for appellant.

Frank Coffey, Dist. Atty., R. J. Adcock, Charles D. Butts and R. W. Crampton, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is murder; the punishment, death.

We are squarely confronted with the question of whether the exclusion by the trial court of prospective jurors who had conscientious scruples against the infliction of death as a punishment for crime deprived appellant of his constitutional right to a trial by a fair and impartial jury. This is the first time this Court has been called upon to pass upon such a ground of error since the decision of the United States Supreme Court in Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, upon which appellant relies, and which, of course, is to be applied retroactively.[1]

In Witherspoon the Court held that due process voided a death sentence imposed by a jury from which were excluded all persons expressing general objections to or conscientious or religious scruples against capital punishment.

In view of a vast amount of misinformation disseminated, it is perhaps important that it be established at the outset what Witherspoon did not hold. It did not outlaw the death penalty as a punishment for crime. It did not hold that the imposition of death under the Illinois statute involved was unconstitutional,[2] nor did it hold that the death penalty constitutes cruel and unusual punishment offending the Eighth Amendment nor, as noted by Mr. Justice White in his dissenting opinion, does the decision prohibit a State Legislature from specifying only death as the punishment for certain crimes, so that the penalty is imposed automatically upon a finding

1. See footnote 22 of the Witherspoon opinion.

2. Cf. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, where the Court invalidated the death penalty provision of the Federal Kidnapping Act. See also Pope v. United States, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317. State v. Forcella, N.J., 245 A.2d 181.

of guilt, with no discretion in judge or jury.

The majority of the Court made clear their ruling by stating:

"* * * Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed concientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected.

"Whatever else might be said of capital punishment, it is at least clear that its imposition by a hanging jury cannot be squared with the Constitution. The State of Illinois has stacked the deck against the petitioner. To execute this death sentence would deprive him of his life without due process of law."

The holding is clarified to some extent by Mr. Justice Stewart, who delivered the majority's opinion, when he wrote:

"The issue before us is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them." See also footnote 21 of said majority opinion.

Mr. Justice Black, dissenting, characterized the holding as "very ambiguous" and further stated

"* * * For as I read the opinion, the new requirement placed upon the States is that they cease asking prospective jurors whether they have 'conscientious or religious scruples against the infliction of the death penalty,' but instead ask whether 'they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them.' (See majority opinion, n. 21)."

In Texas "conscientious scruples" was a cause for challenge prior to the enactment of the Code. White v. State, 16 Tex. 206, 207 (1856); Burrell v. State, 18 Tex. 713 (1857); Hyde v. State, 16 Tex. 445, 446; 35 Juris.2d Jury, Sec. 198.

Prior to the adoption of the 1965 Code of Criminal Procedure the accused as well as the State had the right in capital cases to challenge for cause a juror who had conscientious scruples concerning infliction of the death penalty. Taylor v. State, 131 Tex.Cr.R. 350, 99 S.W.2d 609; Jordan v. State, 154 Tex.Cr.R. 217, 226 S.W.2d 449; Prewitt v. State, 145 Tex.Cr.R. 202, 167 S.W.2d 194. Cf. Villereal v. State, Tex. Cr.App., 61 S.W. 715. Further, the prosecutor in capital cases was permitted to accept some jurors who had stated they had "conscientious scruples" but challenge others on this same ground. Merkel v. State, 75 Tex.Cr.R. 551, 171 S.W. 738; Anderson v. State, 129 Tex.Cr.App. 586, 90 S.W.2d 564. Such practice and procedure prevailed in every capital felony because death was a possible punishment. Two innovations in this area were wrought by the 1965 Code of Criminal Procedure and the 1967 amendments thereto. First, the State must give 15 days written notice prior to trial in any capital case that it intends to seek the death penalty. When the State makes known by written notice that it will not seek the death penalty, the defendant may enter a plea before the court, waive trial by jury and under no circumstances in such case may the death penalty be imposed. Article 1.14, Vernon's Ann.C.C.P., as amended (Acts 1967, 60th Leg., p. 1733, ch. 659, Sec. 1, eff. Aug. 28, 1967). Second, challenges for cause were divided into three groups: (a) those that either the State or Defense could make,

356

(b) those only the State could make, and (c) those only the Defense could make. Article 35.16, V.A.C.C.P. Under this division only the State may now challenge a juror for the reason that he has conscientious scruples in regard to the infliction of death as punishment. Article 35.16, Sec. (b) (1), supra. These changes mean that only in capital cases where the State has announced by written notice that it will seek capital punishment does "conscientious scruples" come into play.

Further attention is directed to the right of the State to challenge for cause any juror who has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment. Article 35.16 (b) (3), V.A.C.C.P. The defense has a corresponding right. Article 35.16 (c) (2), V.A.C.C.P. See also former Article 616, V.A.C.C.P. 1925.

■ It has long been the traditional practice in Texas, before and after the effective date of the 1965 Code, not to excuse a juror in capital cases who simply stated he had conscientious scruples against the death penalty but to interrogate such juror further to determine if this means that he or she could never vote for the death penalty. The challenge for cause on this ground has always been understood to mean that because of such scruples the juror could never vote to inflict the death penalty in any case regardless of the facts or circumstances. Until this appeared the challenge for cause was not sustainable. Such practice squares with the requirements of Witherspoon.

Normally, the prosecutor will clearly establish the juror's disqualification on this ground before challenging for fear that the juror may be re-qualified upon further interrogation and explanation by the defense or the court (See also Article 35.18,

(617) V.A.C.C.P.), and then he will be confronted with the choice of accepting a juror who may have been offended by the premature challenge or unnecessarily using a peremptor challenge.

As earlier noted, prior to the 1965 Code of Criminal Procedure both parties could use the "conscientious scruples" challenge for cause, and neither side wanted the other to have a "windfall" without clearly determining that the juror's scruples were such that he would automatically vote against capital punishment regardless of the facts. Such factor undoubtedly contributed to the growth of the traditional practice in this state.

Unlike the Texas statute or practice, the Illinois statute involved in Witherspoon provided:

"In trials for murder it shall be a cause for challenge of any juror who shall, on being examined, state that he has conscientious scruples against capital punishment, or that he is opposed to the same."

■ The jury in the case at bar was chosen or selected in the traditional Texas manner. Unlike Witherspoon, there was no effort to sweep from the jury panel all "conscientious objectors" in rapid succession without any effort to find out "whether their scruples would invariably compel them to vote against capital punishment." Except for the few members excused by agreement, the jury panel was examined separate and apart as required upon request by statute (Art. 35.17, V.A.C.C.P.[3]). Out of the 126 prospective jurors examined, the record reveals 42[4] who were excused after stating they had conscientious scruples against the infliction of death as a punishment. However, as we read the 827 pages of the voir dire examination, 38 of these

3. As to practice under former Code, see "Examination of Prospective Jurors in Capital Cases." A. R. Stout, 29 TLR 34 (1950).

4. Juror R. P. Buckey (No. 82) testified he did not have conscientious scruples

against the death penalty, but was disqualified when he stated he could never vote for death in the case of a teenager, and had a prejudice against the law which allowed the same. He was not included in the 42 jurors mentioned. See Article 35.16(b) (3), V.A.C.C.P.

42 prospective jurors clearly stated in addition that they could never vote to impose the death penalty in any case or could not conceive or visualize any facts or circumstances which would cause them to vote for the death penalty or feel that it was justified. The court's action in sustaining the State's challenge for cause to these members of the panel is clearly supported by the Witherspoon decision. One juror, Trudy Wilmoth, (No. 66) was excused without further interrogation after she testified she had "conscientious scruples" against the death penalty. She had previously stated, however, that she knew the Lairds, a husband and wife for whose murders appellant was also indicted and whose bodies were pointed out to police by appellant at the time of the discovery of the body of the deceased in the case at bar. It is not apparent from the record for which reason Mrs. Wilmoth was actually excused, but appellant made no objection at the time and we do not understand from the record or briefs that appellant contends that the court erred in excusing this juror. It might be argued that the answers of three [5] of the 42 prospective jurors who stated they had conscientious scruples against the death penalty as a punishment for crime were less than ideally unambiguous as to whether they would vote against capital punishment regardless of the facts or circumstances in any case. We cannot conclude, however, that the court erred in sustaining the State's challenge to these jurors. If the juror's answers be equivocal or qualified, further interrogation is permissible in order to ascertain his viewpoint. 35 Tex.Juris.2d., Jury, Sec. 115, p. 168. The appellant here made no such request for further interrogation. It has long been the holding of this Court that if it is doubtful whether the juror had conscientious scruples in regard to the inflic-

tion of capital punishment, the court's action in sustaining the State's challenge for cause on that ground will be sustained on appeal. Burrell v. State, 18 Tex. 713; Sawyer v. State, 39 Tex.Cr.R. 557, 47 S.W. 650; Myers v. State, 77 Tex.Cr.R. 239, 177 S.W. 1167; Vickers v. State, 92 Tex.Cr.R. 182, 242 S.W. 1032; see also Article 35.21, V.A.C.C.P.

■ Further, before we could say the trial court, who saw these three jurors and heard their answers, was in error in its rulings, it must be observed that the appellant was granted an extra or sixteenth peremptory challenge which was exercised. Just prior to the selection of the twelfth juror (George Osborn, No. 126), the appellant was offered his seventeenth peremptory challenge which he rejected and insisted upon the seating of the twelfth juror.

We are convinced that in the selection of the jury in the case at bar the State did not cross the "line of neutrality" with respect to penalty [6] and we perceive no reversible error. Our holding is supported by the recent decision of the New Jersey Supreme Court in State v. Mathis, 245, A.2d 20 (7/3/68).

■ The impact of Witherspoon upon Texas in the selection of jurors in capital cases where the State is seeking the death penalty will not, while undoubtedly sharpening the traditional practice, so much affect that practice as it will the necessity for preserving for appellate review the manner of that selection. It will certainly be advisable in the future for the court, whether requested by either party or not,[7] to have the court reporter record the voir dire examination of the jury panel, (see Evans v. State, Tex.Cr.App., 430 S.W.2d 502, this day decided) and to include in

---

5. Jurors Mrs. Clark Reynolds (Juror 29), Mrs. Elmer Wilson (Juror 90), Mr. J. B. Holt (Juror 125)

6. In Witherspoon the petitioner had contended that the death qualified jurors would also be unable to render an im-partial decision upon the issue of guilt or innocence, but the court felt the data produced was insufficient to show that such jurors would tend to favor the prosecution.

7. See Article 40.09, Sec. 4, V.A.C.C.P.

every appellate record the jury list indicating the jurors chosen, the ones excused and the reasons therefor, etc.

 In his next ground of error appellant contends that Criminal District Court No. 3 of Tarrant County lacked the authority to impanel the Grand Jury which returned the indictment against him, and that his motion to quash the indictment should have been granted. We find no merit in appellant's contention. Section A of Article 1926–44, V.A.C.S., which created the said Criminal District Court No. 3 in 1965, provides as follows:

"A. Creation and Jurisdiction

The Criminal District Court No. 3 of Tarrant County is created. Its jurisdiction is identical with that provided by law for the Criminal District Court of Tarrant County and the Criminal District Court No. 2 of Tarrant County and shall be exercised concurrently."

While the Act creating the court does not contain express authority to impanel a grand jury, Articles 1926–41 and 1926–43, V.A.C.S., creating the Criminal District Court of Tarrant County (now Criminal District Court No. 1, Acts 1967, 60th Leg., p. 1792, ch 682, Sec. 1) and the Criminal District Court No. 2 of Tarrant County expressly authorizes those courts to impanel grand juries. Therefore, from the language of Article 1926–44, Sec. A, supra, quoted above, we fail to perceive any limitation upon the power of the said Criminal District Court No. 3 preventing it from doing anything which the other Criminal District Courts of Tarrant County could do, including the organization of a grand jury. Cf. Walker v. State, 98 Tex. Cr.R. 663, 267 S.W. 988; Robinson v. State, 100 Tex.Cr.R. 424, 274 S.W. 137. We are not persuaded that the amendment to Section F of Article 1926–44, supra, effective after appellant's trial, gave the court the necessary authority to impanel grand juries for the first time. See Acts 1967, 60th Leg., p. 1792, ch. 682, Sec. 3, effective August 28, 1967.

In view of what we have said above, it is unnecessary for us to determine whether Criminal District Court No. 3 of Tarrant County, despite designation and the attempt to limit its jurisdiction, is also a regular constitutional district court which clearly has the power to impanel grand juries. See Lord v. Clayton, 163 Tex. 62, 352 S.W.2d 718 and cases there cited.

 We find no error in the trial court's refusal to strike the testimony of Dr. Feliks Gwozdz, the pathologist who conducted the autopsy on the deceased, because of the refusal of the State to stipulate as to the qualifications of the pathologist or to the fact that the deceased died of a gunshot wound to the head. Appellant urges that in view of his offer to stipulate there was no necessity to show the extensive experience and educational background of the pathologist or for such witness to exhibit to the jury the outline and drawing of the human head and to describe in detail the "horrible and shocking" condition of the deceased's head, and that such testimony was inflammatory. The burden of proof beyond a reasonable doubt rested upon the State to prove all the elements of the offense charged, including the cause of death. As stated by this Court in Stokes v. State, 162 Tex.Cr.R. 401, 286 S.W.2d 141,

"An accused cannot, by admitting damaging features of the State's case, cut it off from making proof thereof." See also Reeves v. State, 116 Tex.Cr.R. 451, 32 S.W.2d 471; Beard v. State, 146 Tex. Cr.R. 96, 171 S.W.2d 869.

Further, the use of the drawing or outline by the pathologist to make his testimony as to the cause of death clearer to the jury does bring such drawing within the ghastly picture or bloody clothes rule. Marion v. State, Tex.Cr.App., 387 S.W.2d 56.

Ground of error #5 is overruled.

 Appellant next complains that the trial court erred in refusing, when the State objected, to permit appellant's sister

to testify that he had never been convicted of a crime and had not previously been arrested. Appellant admits that character in and of itself was not in issue but contends that such testimony was admissible in mitigation of punishment. It should be remembered that appellant's trial commenced before the 1967 amendment to Article 37.07, V.A.C.C.P., which authorizes bifurcated trials in capital cases where the death penalty is sought by the State. Article 37.07 as originally enacted had no application to pleas of not guilty in capital cases where the State is seeking the death penalty and such cases were to be conducted in one stage proceedings. Rojas v. State, Tex.Cr.App., 404 S.W.2d 30. Such procedure was followed in the case at bar. Therefore, the 1965 provisions of Article 37.07, Sec. 2(b), supra, permitting either party to offer evidence of the defendant's prior criminal record, character or reputation at the penalty stage of a bifurcated trial, was not available to the appellant. Neither had he filed an application for probation and the testimony offered was not admissible for that purpose.

■ As appellant acknowledges, the good character of the accused at this one stage trial could not be proved by testimony that he had not previously been charged or convicted of a criminal offense. Only recently in Smith v. State, 414 S.W.2d 659, this Court said:

"An accused may introduce evidence of his good character to show that it is improbable that he did the act charged. Hamman v. State, 166 Tex.Cr.R. 349, 314 S.W.2d 301; Jones v. State, 10 Tex.App. 552; McCormick & Ray's Texas Law of Evidence, Vol. 2, p. 332, Sec. 1492; 22A C.J.S. Criminal Law § 676, pp. 699–700.

"It appears to be the settled law, however, that the good character of the accused may not be proved by testimony that he has never been previously charged with or convicted of a criminal offense.

Perez v. State, [153 Tex.Cr.R. 223,] 221 S.W.2d 915; Marberry v. State, 106 Tex. Cr.R. 474, 292 S.W. 1107; 23 Tex.Jr. 2d 262, Sec. 171.

"The inquiry as to character must be limited to the general reputation of the person in the community of his residence or where he is best known. Brownlee v. State, 13 Tex.App. 255; Watson v. State, 156 Tex.Cr.R. 585, 244 S.W.2d 515; 23 Tex.Jr.2d 260, Sec. 171.'"

In Smith, similar testimony as that offered here was held inadmissible when offered only at the guilt or innocence stage of a bifurcated trial under the provisions of Article 37.07, supra, despite the fact that the appellant Smith had filed a probation application. Such testimony in Smith would have been clearly admissible at the penalty stage of such proceedings, but it was not again offered.

■ In the case at bar, regardless of Rojas v. State, supra, if the trial judge had conducted a bifurcated trial at appellant's request or without his objection, the testimony offered would have been admissible at the penalty stage of the proceedings and a different question would have been presented.[8] Williams v. State, Tex.Cr.App., 415 S.W.2d 917. Such did not occur and we perceive no error in the trial court's action. Ground of error #8 is overruled.

■ In ground of error #9 appellant contends the trial court erred in failing to charge the jury that if the appellant indicated at any time prior to or during interrogation his desire to remain silent, such interrogation should have ceased, and if it did not, that any statement thereafter made could not be considered *"nor any evidence obtained as a result thereof."* It is claimed that appellant's refusal to sign the polygraph consent form was his indication or wish to remain silent. Reliance is had upon Article 38.22, V.A.C.C.P., and Morales v.

---

8. The same will also be true under the 1967 amendment to Article 37.07, applicable now to pleas of not guilty in capital cases where the State seeks the death penalty.

State, Tex.Cr.App., 427 S.W.2d 51. We reaffirm what was said in Morales v. State, supra, but we fail to find any timely objection to the court's charge on the *particular* basis contained in this ground of error. See Article 36.14, V.A.C.C.P. Nothing is presented for review. The State contends that the evidence did not raise the issue of voluntariness before the jury and the court need not have charged thereon. Since the court did so charge, it would perhaps have been desirable if there had been full compliance with Article 38.22, supra, though, for the reasons stated no reversible error is perceived.

Appellant's grounds of error #3, 6, 7, 10 and 11 deal with the contention that appellant's oral confession, as well as his written confession, was taken and admitted into evidence contrary to Articles 15.17, 38.21, and 38.22, V.A.C.C.P., and his "constitutional rights." We cannot agree.

The record reveals that this appellant was arrested for speeding in the deceased's automobile in an isolated area after a high speed chase by police at 3:50 a.m. on September 23, 1966. Being unable to give the officers a satisfactory explanation as to his possession of the vehicle, he was placed in jail at 4:22 a.m. At 10:30 a.m. the appellant, who was to be nineteen years old the following day, was taken before Corporation Court Judge VanMeter who gave him the warnings required by Article 15.17, supra, in connection with the alleged theft offense, and the appellant indicated to the magistrate he had no questions or requests. It is observed that from his arrest until these warnings there had been no in-custody interrogation of appellant. Between 1 and 2:40 p.m. appellant was interrogated by Ft. Worth City Detective A. I. Weaver concerning the automobile theft. During this questioning appellant was offered the opportunity to call his family, an attorney or any friends, which he declined. Being unable to locate the owner of the automobile to determine if appellant had borrowed the same, Officers Harrison and Jones again questioned appellant between 4:50 p.m. and

5:40 p.m. During this time he agreed to a lie detector test and was returned to his jail cell until 7:55 p.m. when he was taken before polygraph examiner D. E. Wheeler. There appellant refused to sign the polygraph consent form, and Officers Harrison and Jones left for a nearby cafeteria leaving appellant in the custody of Wheeler. Reminding appellant of his right to remain silent, Wheeler began to inquire about the car theft. Shortly thereafter appellant told Wheeler that he had shot the deceased, Kenneth Eugene Jones, at Lake Arlington and had taken his car. He offered to lead the officers to the scene. At this point the officers had no knowledge of the murder. Appellant was then taken at 9:10 p.m. before Justice of the Peace W. W. Matthews who again warned him in accordance with Article 15.17, supra, and informed him he was accused of murder, and had him sign the written warning form. Thereafter appellant lead the officers to the shores of Lake Arlington and the bushes where he had hidden the body of the deceased who had been fishing when shot. He then directed the officers to his home where the rifle used was recovered, subsequently pointed out the pawn shop where he had purchased the rifle, and located in his jail cell the shell casing of the fatal shot which had been hidden therein after his arrest. At 12:20 a.m. on September 24, 1966, appellant was taken to the District Attorney's office. There he was again warned of his rights in accordance with Article 38.22, supra, by Charles Butts, assistant district attorney, and reminded of his right to counsel. Following such warnings appellant gave a written confession. The oral confession was subsequently reduced to writing and signed by a non-police witness, as required by the then existent version of Article 38.22, supra.

Appellant's sister did testify that appellant, the oldest of seven children who lived with their parents, had quit school in the 11th grade, and had done failing work in the 8th, 9th and 10th grades. We find

nothing, however, to indicate that he was incapable in any way of making an intelligent, voluntary and knowing waiver of his rights. There is no evidence that appellant was threatened, tricked or cajoled into a "waiver." The appellant was not held incommunicado nor was there lengthy and uninterrupted interrogation which would mitigate against the finding of a valid waiver.

Before the confessions were admitted into evidence before the jury, the court conducted a separate hearing on the admissibility and voluntariness of the same and reduced its findings to writing. See Article 38.22, supra.

Considering the "totality of circumstances," we are convinced that the requirements of the Texas statutes and the dictates of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, have been met. See McCandless v. State, Tex.Cr.App., 425 S.W.2d 636; Charles v. State, Tex.Cr.App., 424 S.W.2d 909; Anders v. State, Tex.Cr.App., 426 S.W.2d 228; Gunter v. State, Tex.Cr.App., 421 S. W.2d 657; Torres v. State, Tex.Cr.App., 422 S.W.2d 741.

■ We reject appellant's claim advanced without authorities that the court erred in admitting into evidence the written warning form used by Justice of the Peace Matthews and signed by appellant. The exhibit was clearly admissible to demonstrate a compliance with Article 15.17, supra, and as tending to show waiver by the appellant. It is observed that the non-incriminating exhibit was not signed until appellant had been twice warned in accordance with Article 15.17, supra. Ground of error #13 is overruled.

■ Further, we find no error in the court's refusal to delete from appellant's written confession references to blood and "where body of deceased had been dragged and hidden in bushes" because of its inflammatory and prejudicial nature. We do not deem the authorities cited relating to the introduction of photographs showing blood or bloody garments as here controlling. Ground of error #14 is overruled.

Both the State and appellant's court appointed counsel are to be commended upon the excellent quality of their respective briefs. The same has been of tremendous value to this Court in its study of over 2,000 pages of this record.

Finding no reversible error, the judgment is affirmed.

OPINION ON APPELLANT'S
MOTION FOR REHEARING

MORRISON, Judge.

■ This Court does not hesitate to reverse where it is apparent that the trial court has excluded from the jury all persons expressing general objections to or conscientious or religious scruples against the infliction of death as punishment for crime as enunciated by the Supreme Court of the United States in Witherspoon v. State of Illinois, supra. See Ex parte Bryan, Tex.Cr.App., 434 S.W.2d 123, and Ellison v. State, Tex.Cr.App., 432 S.W.2d 955, this day decided. We do, however, remain convinced of the soundness of our original disposition of the case at bar.

The amicus curiae brief, as well as appellant's brief on rehearing, presented and so ably argued, expects and says that in Witherspoon the Supreme Court held that perfection must be achieved in the examination of every venireman. With this drastic standard we, as practical lawyers who have sat on the trial benches of this State and have qualified veniremen to serve in cases where the death penalty has been sought, are not inclined to agree. It may be that the Supreme Court has written a rule of law whereby no death penalty conviction could ever be upheld even though that is exactly what they say they were not doing. We must accept them at their word and re-examine our original opinion.

It would serve no useful purpose, as we see it, to review in this opinion the examina-

tion, cross-examination, or lack of cross-examination, of each of the 126 veniremen examined in this case. This was done exhaustively by the author of the orginal opinion. Where, as here, several of the venire expressed their convictions against the infliction of the death penalty and appellant's counsel, evidently being satisfied with the veniremen's statements or because he did not want the veniremen for some other reason, made no effort to qualify them for service, we do not conclude that it becomes the duty of the court to take other steps toward attempting to qualify the veniremen. Veniremen may still be excused by agreement in this State; and it is our view that the rule set forth in Footnote 21 in Witherspoon has application to veniremen whom appellant seriously tried to qualify for service, and serves as an excellent guideline in such cases. We think, however, that it should not be construed as imposing upon trial courts additional duties when it is evident that the accused did not want the venireman as a juror. This is why we pointed out in our original opinion that "The appellant here made no such request for further interrogation."

This is not a case where the manner of jury selection is shown by stipulation only which reflects a violation of the Witherspoon standards as was the case in Spencer v. Beto, 398 F.2d 500 (5th Cir).

Remaining convinced that this cause was properly decided originally, appellant's motion for rehearing is overruled.

## CONCURRING OPINION ON REHEARING

WOODLEY, Presiding Judge.

Believing that this appeal was properly decided on original submission, and upon authority of the opinions in Scott v. State, Tex.Cr.App., 434 S.W.2d 678; Ellison v. State, Tex.Cr.App., 432 S.W.2d 955; and Ex parte Bryan, Tex.Cr.App., 434 S.W. 2d 123, this day decided, I concur in the overruling of appellant's motion for rehearing.